[THE STATE EX REL.] MORGAN *v.* CITY OF NEW LEXINGTON.

[Cite as *State ex rel. Morgan v. New Lexington,*
112 Ohio St.3d 33, 2006-Ohio-6365.]

(No. 2006–0714—Submitted September 19, 2006—Decided December 20, 2006.)

**Per Curiam.**

{¶ 1} This is an original action for a writ of mandamus to compel a city to provide access to certain records related to an employee's discharge from employment.

{¶ 2} Respondent, the city of New Lexington, Ohio,[1] employed relator, Victoria Morgan, as the clerk of the mayor's court and the payroll clerk. New Lexington had entered into a collective-bargaining agreement with the American Federation of State, County and Municipal Employees that had been effective until December 2003 and that had provided rights and benefits to Morgan. After the

---

1. According to respondent, New Lexington is now a village.

collective-bargaining agreement expired, it continued to govern city employee work rules, benefits, and conduct.

{¶ 3} In 2004, New Lexington disciplined Morgan for failure to properly report payroll information to the state Police and Fire Pension Fund, which resulted in the city's being fined several thousand dollars. After the police chief received complaints from the Fraternal Order of Police of payroll errors and miscalculation of leave balances by Morgan, he and the mayor requested payroll and leave records for all employees from Morgan. Morgan failed to provide her own payroll and leave records.

{¶ 4} The police chief then conducted a preliminary investigation of Morgan and found sufficient evidence to warrant turning the matter over to the State Auditor and the Ohio Bureau of Criminal Identification and Investigation ("bureau"). By letter dated January 28, 2005, the police chief notified the mayor that based upon his investigation, Morgan "received compensation that she was not entitled to, and that she falsified official documents to gain said compensation." The police chief included an investigative report and copies of payroll sheets, check stubs, and canceled checks. A few days later, the Supreme Court of Ohio notified the city that the mayor's court had failed to submit quarterly statistical reports as required by R.C. 1905.033. According to the police chief, the delinquencies in reporting were the result of Morgan's neglect.

{¶ 5} On February 11, 2005, the police chief turned over the criminal investigation to the bureau. The police chief noted that "evidence has been uncovered that indicates that the payroll clerk was receiving compensation that she was not entitled to," that "she falsified payroll records to conceal the alleged theft," and that it appeared that "she forged official documents to conceal time she was taking off."

{¶ 6} On February 18, 2005, the city notified Morgan that it would conduct a predisciplinary conference on February 22, 2005, because charges against her—if substantiated by evidence—would constitute a basis for firing her. The city noted that the conference had been continued twice before on Morgan's request. The city specified 18 separate charges against Morgan, including "[d]ereliction of duty in failing to timely and properly file reports with the Ohio Supreme [C]ourt," "failure to file reports and make timely payments to public employee retirement systems on behalf of city employees," "failure to timely file IRS reports and documents," "failure to make timely payments on accounts after having withheld money from employee pay checks," "misappropriation of funds in making unauthorized and unapproved payments" to herself, misrepresentation of her hours worked, insubordination by failing to follow the mayor's directives, dishonesty by lying to the mayor, neglect of duty in failing to make timely reports and payments, and violations of the city's computer policy.

{¶ 7} On February 22, 2005, the city held the predisciplinary conference. The city ultimately fired Morgan. Morgan had indicated that she would file a civil or administrative action challenging her termination.

{¶ 8} Nearly a year later, on February 17, 2006, Morgan, through counsel, requested access from the mayor and the city to all records relating to her discharge from employment, including those related to each of the city's 18 charges against her specified in the city's February 18, 2005 letter. More particularly, Morgan requested "[a]ll records or documents which show or purport to show" the misconduct alleged in the city's charges. For example, Morgan requested "[a]ll records or documents which show or purport to show that prior to February 22, 2005, Ms. Morgan misappropriated any funds by making unauthorized or unapproved payments to herself" and "[a]ll records or documents which show or purport to show that prior to February 22, 2005, Ms. Morgan failed to follow any directives of the Mayor concerning Ms. Morgan's use of overtime, including copies of the Mayor's alleged directives and copies of Ms. Morgan's timesheet(s) or payroll record(s) showing the alleged failure."

{¶ 9} In addition to the records supporting the city's 18 charges against her, Morgan requested the following:

{¶ 10} "(20) All records or documents which show or purport to show that Ms. Morgan was advised of her right to have union representation at the February 22, 2005, pre-disciplinary 'conference.'

{¶ 11} "(21) Ms. Morgan's entire personnel file.

{¶ 12} "(22) Any published City policies or rules of conduct for employees and any applicable provisions of any collective bargaining agreement which relate to employee conduct or discipline, including any policies, rules or collective bargaining agreement provisions relating to progressive discipline."

{¶ 13} Morgan's request noted that the records relating to the city's 18 charges against her had been "compiled or readily available to the City" for her February 22, 2005 predisciplinary conference and assumed that the remaining records were "readily available to the City."

{¶ 14} By letter dated February 22, 2006, the city denied Morgan's request. The city noted that "virtually every document falling within the scope of the twenty-two (22) numbered paragraphs of your letter has been turned over to the investigators who are handling the criminal investigation, and parallel the State Auditor's investigation." The city stated that based on the foregoing, the requested records were no longer in the city's physical possession, and they constituted exempt trial-preparation records and confidential law-enforcement investigatory records. The city further claimed that Morgan's records request was "so broadly worded that it is defective on its face," that the city would not be

able to "perform 'research'" for her, and that the file clerk could not make a judgment about which records she requested. The city requested that Morgan identify "by date and author" the records she sought.

{¶ 15} In Morgan's response, dated February 24, 2006, to the city's denial of her records request, she noted that she was merely "seeking all public records utilized by New Lexington to support any of the charges against [her] as set forth in its letter of February 18, 2005." That is, Morgan emphasized that she was requesting only those "records which supposedly supported the charges; which were created, compiled or retained in the ordinary course of the City's business; and which existed prior to the time the City prepared its written charges." She was "not seeking any records that were specifically compiled in reasonable anticipation of litigation or were prepared by any law enforcement official as part of any investigation then under way."

{¶ 16} On March 24, 2006, the State Auditor issued a draft report finding that the amount paid to Morgan during her employment with New Lexington exceeded the amount permissible under the city's collective-bargaining agreement with the employees' union and an ordinance salary schedule and that this excess amount was attributable to overtime paid to Morgan without proper preapproval. The State Auditor further determined that she had a leave-hour deficit of 110.71 hours, which she had improperly taken as leave. Based on the audit, the State Auditor issued findings of recovery against Morgan for over $10,500.

{¶ 17} At some unspecified time, all of the documents relating to Morgan that were in the possession of the city, including payroll and overtime records, canceled checks, and leave reports, had been turned over to the bureau and the State Auditor for their investigations, but they were returned to New Lexington on May 19, 2006. These records are in storage boxes and are being sorted and packaged for transfer to the Perry County Prosecuting Attorney for presentation to the grand jury.

{¶ 18} According to the city, as of early 2005, "there were no specific 'personnel files' for municipal employees that were ever designated by New Lexington as such," and as of early 2006, there were no published personnel policies.

{¶ 19} On April 10, 2006, Morgan filed this action for a writ of mandamus to compel New Lexington to produce the requested records pursuant to R.C. 149.43, the Public Records Act. The city submitted an answer, and on June 21, 2006, we granted an alternative writ. *State ex rel. Morgan v. New Lexington*, 109 Ohio St.3d 1504, 2006-Ohio-2998, 849 N.E.2d 1026. The parties then filed evidence and briefs.

{¶ 20} This cause is now before the court for a consideration of the merits.

{¶ 21} New Lexington claims that the court need not address the merits of Morgan's mandamus claim and that this case should be dismissed because Morgan's merit brief does not comply with S.Ct.Prac.R. VI(2)(B)(4). In original actions filed in this court, "[a]ll merit briefs shall conform to the requirements set forth in S.Ct.Prac.R. VI and VIII, to the extent those rules are applicable." S.Ct.Prac.R. X(8). Under S.Ct.Prac.R. VI(2)(B)(4), Morgan's brief was required to contain "[a]n argument, headed by the proposition of law that [relator] contends is applicable to the facts of the case and that could serve as a syllabus for the case if [relator] prevails. See *Drake v. Bucher* (1966), 5 Ohio St.2d 37, at 39 [34 O.O.2d 53, 213 N.E.2d 182]. If several propositions of law are presented, the argument shall be divided with each proposition set forth as a subheading."

{¶ 22} New Lexington contends that Morgan's brief contains no propositions of law and does not contain "anything remotely resembling that which could be used as this court's syllabus." "The purpose of this rule is to present to the court in concise form the legal issues involved in the cause." *Drake v. Bucher*, 5 Ohio St.2d at 39, 34 O.O.2d 53, 213 N.E.2d 182. Although "a substantial disregard of the whole body of these rules cannot be tolerated," "[i]n order to promote justice, the court exercises a certain liberality in enforcing a strict attention to its rules, especially as to mere technical infractions." Id. at 40, 34 O.O.2d 53, 213 N.E.2d 182.

{¶ 23} Although Morgan did not specifically designate propositions of law in her merit brief, she included argument headings that served the purpose of organizing her argument, e.g., that she "is entitled to access the records because they are not protected from disclosure by any exception to the Ohio Public Records Act" and that her "February 21, 2006 [sic, February 17] letter to the city constituted a valid public records request." Her brief presented the legal issues in this case in a sufficient, concise manner. Therefore, Morgan did not substantially disregard S.Ct.Prac.R. VI(2)(B)(4). Those cases that we dismissed because of a failure to comply with our Rules of Practice are distinguishable. Cf. *Drake*, 5 Ohio St.2d 37, 34 O.O.2d 53, 213 N.E.2d 182 (pervasive failure to comply with rules); *State ex rel. Queen City Chapter of Soc. of Professional Journalists v. McGinnis* (1984), 10 Ohio St.3d 54, 10 OBR 316, 461 N.E.2d 307 (failure to file compliant brief after being ordered twice to do so).

{¶ 24} Therefore, we deny New Lexington's request to dismiss this action. Morgan sufficiently complied with S.Ct.Prac.R. VI(2)(B)(4).

### Motion to Strike

{¶ 25} New Lexington also requests that the propositions of law attached to Morgan's reply brief be stricken because otherwise, the city's "due process rights will be abridged."

{¶ 26} The determination of a motion to strike is vested within the broad discretion of the court. *State ex rel. Mora v. Wilkinson,* 105 Ohio St.3d 272, 2005-Ohio-1509, 824 N.E.2d 1000, ¶ 9–10. Civ.R. 12(F) allows a court to strike any pleading or material determined to be insufficient, redundant, immaterial, impertinent, or scandalous. See S.Ct.Prac.R. X(2) ("The Ohio Rules of Civil Procedure shall supplement these rules unless clearly inapplicable").

{¶ 27} We deny the motion. Morgan's inclusion of propositions in her reply brief was neither insufficient, redundant, immaterial, impertinent, nor scandalous. These propositions of law did not prejudice New Lexington in preparing its merit brief, because they relate to the same arguments contained in Morgan's initial brief under argument headings. The city's due process rights to respond to Morgan's contentions have not been compromised.

## Mandamus: Proper Request for Records

{¶ 28} The Public Records Act reflects the state's policy that "open government serves the public interest and our democratic system." *State ex rel. Dann v. Taft,* 109 Ohio St.3d 364, 2006-Ohio-1825, 848 N.E.2d 472, ¶ 20. We therefore construe R.C. 149.43 liberally in favor of broad access, with any doubt resolved in favor of disclosure of public records. Id.

{¶ 29} New Lexington contends that Morgan is not entitled to access to the requested records relating to her discharge from employment because Morgan's request for those records failed to identify any records with reasonable clarity. "[I]t is the responsibility of the person who wishes to inspect and/or copy records to identify with reasonable clarity the records at issue." *State ex rel. Fant v. Tober* (Apr. 28, 1993), Cuyahoga App. No. 63737, 1993 WL 173743, *1, affirmed in *State ex rel. Fant v. Tober* (1993), 68 Ohio St.3d 117, 623 N.E.2d 1202.

{¶ 30} Requests for information and requests that require the records custodian to create a new record by searching for selected information are improper requests under R.C. 149.43. *State ex rel. Lanham v. Ohio Adult Parole Auth.* (1997), 80 Ohio St.3d 425, 427, 687 N.E.2d 283 (claim for certain information, i.e., qualifications of agency members, rather than for specific records); *State ex rel. Kerner v. State Teachers Retirement Bd.* (1998), 82 Ohio St.3d 273, 274, 695 N.E.2d 256 (no duty to create new record by searching for and compiling information from existing records).

{¶ 31} Admittedly, some of the language used by Morgan in her February 17, 2006 request might be construed to broadly request that the records custodian for New Lexington search existing records to find records that meet certain criteria, e.g., "[a]ll records or documents which show or purport to show that prior to February 22, 2005, [she] misappropriated any funds." See *State ex rel. Thomas v. Ohio State Univ.* (1994), 70 Ohio St.3d 1438, 638 N.E.2d 1041, citing

*Fant,* Cuyahoga App. No. 63737, 1993 WL 173743, *1 ("relator's request for mandamus relief is denied to the extent that his public records request broadly sought respondents to search for records containing selected information").

{¶ 32} Nevertheless, these defects in Morgan's request are not fatal to her mandamus claim for the following reasons.

{¶ 33} First, unlike the request held to be improper in *Lanham,* 80 Ohio St.3d 425, 687 N.E.2d 283, Morgan's request was not for information, but for the specific records that supported the city's discharge of her from employment. Morgan's request must be considered in the context of the circumstances surrounding it. Her request was structured to mirror the city's letter specifying 18 separate charges against her. The request merely sought the records verifying those charges.

{¶ 34} Second, unlike the request we found to be improper in *Kerner,* 82 Ohio St.3d 273, 695 N.E.2d 256, Morgan's request did not require the city to make a new record by compiling certain information from existing records.

{¶ 35} Third, in *Thomas,* 70 Ohio St.3d 1438, 638 N.E.2d 1041, although we denied a writ of mandamus insofar as the records request broadly sought to have the custodian search for records containing selected information, we also held that the mandamus claim might have merit "to the extent that relator's request specified particular persons who, because of their positions, would be likely to have and maintain the records requested." Morgan's February 17, 2006 request was addressed to a specific person, i.e., the mayor, who had general knowledge of the requested records relating to Morgan's discharge. Morgan's request was drafted to seek the records supporting the 18 separate charges specified in the mayor's February 18, 2005 letter to her.

{¶ 36} Fourth, New Lexington admitted in its response to Morgan's records request that it knew where the requested documents were. New Lexington asserted that "virtually every document falling within the scope" of Morgan's request had been turned over to investigators, and these same records were back in the possession of the city on May 19, 2006. Therefore, the city could respond to Morgan's request without having to search for these records.

{¶ 37} Fifth, notwithstanding the city's implication to the contrary, we have never held that in order to constitute a viable request, the request must specify the author and date of the records requested. Although this may be helpful in identifying the requested records, the failure to do so does not automatically result in an improper request for public records, particularly where, as here, it is evident that the public office was aware of the specific records requested. We do not require perfection in public-records requests. *State ex rel. Cater v. N. Olmsted* (1994), 69 Ohio St.3d 315, 320, 631 N.E.2d 1048.

{¶ 38} Finally, Morgan specifically requested certain records, including mayoral directives, timesheets, personnel records, and city personnel policies. Morgan did not request a "complete duplication" of the city's files. See *State ex rel. Warren Newspapers, Inc. v. Hutson* (1994), 70 Ohio St.3d 619, 624, 640 N.E.2d 174, citing *State ex rel. Zauderer v. Joseph* (1989), 62 Ohio App.3d 752, 756, 577 N.E.2d 444 ("R.C. 149.43 does not contemplate that any individual has the right to a complete duplication of the voluminous files kept by government agencies").

{¶ 39} Therefore, Morgan's records request was sufficiently specific for purposes of invoking the Public Records Act.

## Mandamus Is the Appropriate Remedy

{¶ 40} New Lexington asserts that under R.C. 2731.05, Morgan must establish the lack of an adequate remedy in the ordinary course of law in order to be entitled to a writ of mandamus to compel access to the requested records. In most mandamus cases, the relator must prove the lack of an adequate remedy in the ordinary course of the law to be entitled to the writ. See R.C. 2731.05; *State ex rel. Vaughn Industries, L.L.C. v. Ohio Dept. of Commerce*, 109 Ohio St.3d 482, 2006-Ohio-2994, 849 N.E.2d 31, ¶ 18.

{¶ 41} New Lexington's assertion, however, is incorrect. We have specifically held that "the requirement of the lack of an adequate legal remedy does not apply to public-records cases." *State ex rel. Gaydosh v. Twinsburg* (2001), 93 Ohio St.3d 576, 580, 757 N.E.2d 357; see, also, *State ex rel. Dist. 1199, Health Care & Social Serv. Union, SEIU, AFL–CIO v. Lawrence Cty. Gen. Hosp.* (1998), 83 Ohio St.3d 351, 354, 699 N.E.2d 1281 ("persons seeking public records under R.C. 149.43 need not establish the lack of an adequate remedy at law in order to be entitled to a writ of mandamus"); *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 426–427, 639 N.E.2d 83.

{¶ 42} New Lexington also suggests that we should recognize a civil analogue to *Steckman*, 70 Ohio St.3d 420, 639 N.E.2d 83, and hold that a civil litigant is relegated to discovery in the case and is not entitled to institute a mandamus action for the records in lieu of discovery. In *Steckman*, at paragraph two of the syllabus, we held that in a criminal proceeding, "a defendant may use only Crim.R. 16 to obtain discovery."

{¶ 43} New Lexington's contention lacks merit. We have specifically rejected an expansion of the *Steckman* holding concerning Crim.R. 16 discovery to civil lawsuits. *Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, 821 N.E.2d 564 (litigant may use the Public Records Act to request public records related to a pending civil lawsuit after the expiration of the discovery deadline in that lawsuit). We found any reliance on *Steckman* unavailing because a civil lawsuit does not raise the same concerns as a criminal proceeding:

{¶ 44} "Of particular concern in *Steckman* was that '[i]n order to avoid the results of Crim.R. 16, some defendants (more and more we find) are resorting to the use of R.C. 149.43 to, we believe, obtain information to which they are not entitled under Crim.R. 16 *and* (and we emphasize) to bring about interminable delay in their criminal prosecutions.' (Emphasis sic.) [70 Ohio St.3d] at 428, 639 N.E.2d 83. These concerns are not relevant here. Gilbert is an attorney representing a client in a civil lawsuit, who has requested documents to which any other member of the public would be entitled under the Public Records Act. Further, Gilbert is not seeking to delay the prosecution of a case against himself, or even against his client." Id. at ¶ 9.

{¶ 45} Like Gilbert, Morgan merely seeks the records for use in a civil lawsuit and is not seeking to delay the prosecution of a case against herself.

{¶ 46} Therefore, the presence of alternate remedies to acquire the records, e.g., an action for discovery under R.C. 2317.48 or Civ.R. 34(D) before filing a civil case, does not preclude this mandamus action. Mandamus remains the appropriate remedy to compel compliance with R.C. 149.43. *State ex rel. McGowan v. Cuyahoga Metro. Hous. Auth.* (1997), 78 Ohio St.3d 518, 520, 678 N.E.2d 1388.

### Exceptions to Disclosure: Confidential Law– Enforcement Investigatory Records

{¶ 47} New Lexington contends that the requested records are excepted from disclosure because they are confidential law-enforcement investigatory records. In assessing the city's claim, "[a]ny exceptions to disclosure under the Public Records Act must be strictly construed against the public-records custodian, and a records custodian bears the burden of establishing the applicability of an exception." *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees,* 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 28. R.C. 149.43 exempts "[c]onfidential law enforcement investigatory records" from the definition of "[p]ublic record" for purposes of the Public Records Act. R.C. 149.43(A)(2) defines "[c]onfidential law enforcement investigatory record" as "any record that pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent that the release of the record would create a high probability of disclosure of" any of the types of information set forth in subsections (a) through (d).

{¶ 48} "Exempting records from release under R.C. 149.43(A)(2) involves a two-step analysis: (1) Is the record a confidential law enforcement record? and (2) Would release of the record create a high probability of disclosure of any of the four types of information specified in R.C. 149.43(A)(2)?" *State ex rel. Yant v. Conrad* (1996), 74 Ohio St.3d 681, 684, 660 N.E.2d 1211.

{¶ 49} Under the first requirement, records are not confidential law-enforcement records if they relate to employment or personnel matters rather than directly to the enforcement of law. *State ex rel. Multimedia, Inc. v. Snowden* (1995), 72 Ohio St.3d 141, 143, 647 N.E.2d 1374; *State ex rel. Lorain Journal Co. v. Lorain* (1993), 87 Ohio App.3d 112, 115, 621 N.E.2d 894.

{¶ 50} In her February 24, 2006 letter, Morgan clarified that the records she sought related to general employment matters, e.g., timesheets, mayoral directives, and personnel records and policies, which preceded any investigation commenced by the New Lexington police, the bureau, or the State Auditor. In *State ex rel. Musial v. N. Olmsted,* 106 Ohio St.3d 459, 2005-Ohio-5521, 835 N.E.2d 1243, and *Yant,* 74 Ohio St.3d 681, 660 N.E.2d 1211, the relators specifically requested records generated by a police or agency investigation into a violation of law, and the court found that the records thus constituted confidential law-enforcement records. See, e.g., *Musial,* 106 Ohio St.3d 459, 2005-Ohio-5521, 835 N.E.2d 1243, ¶ 20 ("These records were generated by the police investigation of alleged misconduct of Musial in his capacity as mayor and of his administrative assistant in securing favorable service and rental rates for a city-owned facility. Therefore, the records are confidential law-enforcement records"); *Yant,* 74 Ohio St.3d at 684, 660 N.E.2d 1211 (investigative file constituted confidential law-enforcement record).

{¶ 51} Unlike the records held to be confidential law-enforcement records in *Musial* and *Yant,* the records here were not generated by the various investigations concerning Morgan. Instead, they were records made in the routine course of public employment before those investigations began. Therefore, the requested records are not confidential law-enforcement records and are not excepted from disclosure under the Public Records Act.

{¶ 52} Consequently, New Lexington has not met its burden to establish that the requested records are excepted from disclosure under R.C. 149.43.

## Clean Hands

{¶ 53} New Lexington argues that Morgan's misconduct prevents her from being entitled to the requested extraordinary relief in mandamus. The clean-hands doctrine specifies that "he who seeks equity must do equity, and that he must come into court with clean hands." *Christman v. Christman* (1960), 171 Ohio St. 152, 154, 12 O.O.2d 172, 168 N.E.2d 153. On rare occasions, we have recognized that "while mandamus is considered a legal remedy, equitable principles often govern its issuance, and it may be denied to those who do not come before the court with clean hands." *State ex rel. Albright v. Haber* (1942), 139 Ohio St. 551, 553, 23 O.O. 33, 41 N.E.2d 247.

{¶ 54} We will not deny the requested writ on this basis. Morgan has not yet been found guilty of criminal misconduct; no criminal proceeding is currently pending against her. More important, R.C. 149.43(C) allows any person who—like Morgan—is aggrieved by the failure of a public office to make a requested public record available for inspection and copying to commence a mandamus action to compel the public office to provide access to the record. There is no condition based on the moral quality of the person requesting the record. Nor is the purpose of the requester relevant to the propriety of the request. *State ex rel. Fant v. Enright* (1993), 66 Ohio St.3d 186, 610 N.E.2d 997, syllabus ("A person may inspect and copy a 'public record,' as defined in R.C. 149.43(A), irrespective of his or her purpose for doing so").

{¶ 55} Therefore, the "clean hands" doctrine does not bar Morgan's mandamus claim under R.C. 149.43.

### Nonexistent Records

{¶ 56} The city contends that Morgan is not entitled to her personnel file or employee policies and rules of conduct because they did not exist at the time of her termination from employment. The city is correct that it has no duty to create new documents to satisfy Morgan's records request. *Norris v. Budgake* (2000), 89 Ohio St.3d 208, 209, 729 N.E.2d 758.

{¶ 57} Nevertheless, respondents have not established that these requested records do not exist. Regarding her personnel files, respondents' evidence stated only that "as of early 2005, there were no specific 'personnel files' for municipal employees *that were ever designated by New Lexington* as such." (Emphasis added.) The implication of this affidavit statement is that personnel records for Morgan exist even though they might not be expressly designated as such by the city. That is, records that are the functional equivalent of personnel files exist and are in the custody of the city. For the requested personnel policies, the city did not introduce evidence that these policies did not exist at the time of Morgan's discharge. In fact, the city claimed that the expired collective-bargaining agreement governed the work rules, benefits, and conduct of its employees, but it did not provide Morgan copies of the collective-bargaining agreement in response to her records request.

### Attorney Fees

{¶ 58} Morgan also requests attorney fees. We deny Morgan's request because she has not established a sufficient *public* benefit. Like the city employee requesting records of a city investigation regarding a charge of misconduct against the employee in *State ex rel. Cranford v. Cleveland,* 103 Ohio St.3d 196, 2004-Ohio-4884, 814 N.E.2d 1218, ¶ 26, Morgan has requested records beneficial mostly to *her* for purposes of a potential civil action.

Conclusion

{¶ 59} Based on the foregoing, Morgan has established her entitlement to the requested relief, and New Lexington has not established the applicability of any exception to disclosure under the Public Records Act. Therefore, we grant a writ of mandamus to compel New Lexington to provide access to the requested records. We also deny Morgan's request for attorney fees.

Writ granted.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

RESNICK, J., concurs in part and dissents in part.

———————

**ALICE ROBIE RESNICK, J., concurring in part and dissenting in part.**

{¶ 60} I concur in the granting of the writ. However, I would also award attorney fees to relator as the prevailing party in a mandamus action brought pursuant to R.C. 149.43. See *State ex rel. Highlander v. Rudduck*, 103 Ohio St.3d 370, 2004-Ohio-4952, 816 N.E.2d 213, ¶ 26 (Resnick, J., concurring in part and dissenting in part); *State ex rel. Gannett Satellite Information Network, Inc. v. Petro* (1997), 80 Ohio St.3d 261, 268, 685 N.E.2d 1223 (Resnick, J., concurring); *State ex rel. Pennington v. Gundler* (1996), 75 Ohio St.3d 171, 175–178, 661 N.E.2d 1049 (F.E. Sweeney, J., concurring in part and dissenting in part).

———————

Bailey Cavalieri, L.L.C., Dennis D. Grant, and Sabrina C. Haurin, for relator.

Eugene Nevada, for respondent.