[Cite as *Turner v. Lyndhurst*, **2017-Ohio-7129**.]

| | |
|---|---|
| ELAINE TURNER | Case No. 2017-00379-PQ |
| Requester | Special Master Jeffery W. Clark |
| v. | REPORT AND RECOMMENDATION |
| CITY OF LYNDHURST-MAYOR'S OFFICE | |
| Respondent | |

{¶1} On April 24, 2017, requester Elaine Turner filed a complaint under R.C. 2743.75 alleging denial of access to public records in violation of R.C. 149.43(B) by respondent City of Lyndhurst – Mayor's Office ("Lyndhurst" or "City"). On May 1, 2017, the court issued an order requiring Turner to submit a copy of her original public records request, along with any written responses or other communications relating to the request, as required by R.C. 2743.75(D)(1). On May 16, 2017, Turner filed 34 pages of emails and attachments, titled "All Correspondence Case # 2017-00379-PQ." The case proceeded to mediation, and on June 30, 2017, the court was notified that the case was not resolved and that mediation was terminated. On July 10, 2017, the City filed its response and motion to dismiss.

{¶2} R.C. 149.43(C) provides that a person allegedly aggrieved by a violation of division (B) of that section may either commence a mandamus action, or file a complaint under R.C. 2743.75. In mandamus actions alleging violations of R.C. 149.43(B), a relator must establish by "clear and convincing evidence" that she is entitled to relief. *State ex rel. Miller v. Ohio State Hwy. Patrol,* 136 Ohio St.3d 350, 2013-Ohio-3720, ¶ 14. As for actions under R.C. 2743.75 alleging violations of R.C. 149.43(B), neither party has suggested that another standard should apply, nor is another standard prescribed by statute. R.C. 2743.75(F)(1) states that such claims are to be determined through "the ordinary application of statutory law and case law * * *."

Accordingly, the merits of this claim shall be determined under a standard of clear and convincing evidence, i.e., "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶3} The City moves to dismiss the complaint on the grounds that: 1) the City has timely produced all pertinent documents that are responsive to Turner's requests, 2) Turner's requests are for information rather than for specific existing records, and 3) Turner makes an impermissible request to create new records.  In construing a motion to dismiss pursuant to Civ.R. 12(B)(6), the court must presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988).  Then, before the court may dismiss the complaint, it must appear beyond doubt that plaintiff can prove no set of facts entitling her to recovery. *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 245 (1975). The unsupported conclusions of a complaint are, however, not admitted and are insufficient to withstand a motion to dismiss. *Mitchell* at 193.

{¶4} In ruling on the motion to dismiss, the court is mindful that the policy underlying the Public Records Act is that "open government serves the public interest and our democratic system." *State ex rel. Dann v. Taft*, 109 Ohio St.3d 364, 2006-Ohio-1825, ¶ 20.  Therefore, R.C. 149.43 must be construed "liberally in favor of broad access, and any doubt is resolved in favor of disclosure of public records." *State ex rel. Cincinnati Enquirer v. Hamilton Cty.*, 75 Ohio St.3d 374, 376, 662 N.E.2d 334 (1996).

{¶5} In an action to enforce R.C. 149.43(B), a public office may produce the requested records prior to the court's decision, and thereby render the claim for production of records moot.  *State ex rel. Striker v. Smith*, 129 Ohio St.3d 168, 2011-

Ohio-2878, ¶ 18-22.  A court considering a claim of mootness must first determine what records were requested, and then whether all responsive records were provided.

In the complaint itself, Turner stated:

a. "After questioning an budget allocated expense after I attended a council meeting last winter, I asked for more info on what the 976,000 spent for Permanent Improvement Fund 410.  I also placed inquiry into the Mayors 80,000 in "other" expenses..  I finally received expense report stating these amounts, with the Mayors hospitalization acounting for 35,000, from the mayors private lawyer Paul Murphy but denied any further document to me with regard to the DETAILS of permanent improv. fund.  I did get a roofing contract receipt for 2,000!"  (Complaint p. 1.)[1]

In apparent reference to the same December request, Turner later stated:

b. "In December of 2016 I asked the mayor for a report of expenditures because the year before I remembered there was something like one million allocated for a permanent improvement fund * * * After numerous emails which felt like playing riddle games with the requesting of the correct document, by name, I got it right, and the attorney paul Murphy finally granted me the city's expense report."  (Complaint, p. 3.)

The complaint then alluded to follow-up questions Turner made to the Mayor and the City Attorney to "explain" or "detail" the expense report, and her dissatisfaction with the responses they made to those questions.

{¶6} Turner did not attach to her complaint a copy of "the original records request and any written responses or other communications relating to the request from the public office or person responsible for public records," as required by R.C. 2743.75(D)(1), or indicate whether the request had been verbal or in writing.  Her only description of the request was that she had asked for "more info" or "a report of expenditures," and the complaint stated that with respect to either formulation of the request she had "finally received expense report stating these amounts," and "I got it right, and the attorney paul Murphy finally granted me the city's expense report."  To

---

[1] All spelling, grammar, and punctuation in quotes from the parties' correspondence are reproduced verbatim.

clarify this claim, the court issued an order on May 1, 2017 for Turner to provide the statutorily required documentation of her request(s), and responses.  In response to this order, Turner submitted copies of email correspondence with Lyndhurst dated December 28, 2016 through May 10, 2017, which revealed the following:

{¶7} The earliest email is dated December 28, 2016, from Law Director Paul Murphy to Turner stating:

    c.  "This email will confirm our telephone conversation of this morning.  At that time I stated I was the Director of Law for the City of Lyndhurst, and in that capacity I reply to all public records requests.  I was calling to clarify your public records request made to Mrs. Kovalchik by voice mail last week.  Your request for certain records was unclear, and could involve many thousands of documents.

    d.  As a result of our conversation, I am sending to you the Minutes from the only Council Meeting you attended and spoke at last year, March 7.  Many budgetary items were reported on at that Meeting, and the Minutes may jog your memory as to the information you seek.  I am also enclosing a copy of Ordinance          No. 2016-13, which was adopted at that Meeting, and again may jog your memory as to the information (specifically, $1,000,000.00 in capital improvements) you believe you heard discussed.  Finally, I am enclosing a copy of the deer survey results you previously requested from Mayor Ward.

    e.  This completes the City's response to your requests. Any future public records requests should be addressed to me.  My contact information is listed below."

At 3:28 PM Turner replied,

    f.  "I'm going to need a bit more detail on 410.  Also the mayors "other" expenses".

At 3:38 PM Murphy responded,

    g.  "That is not a valid public records request.  These documents were provided to you, not at your request, but only in my effort to jog your memory as to which documents you were referring to in your message, since you said you heard references to them at the Council Meeting you attended and spoke at.

Please specify a certain public record, and it will be provided to you if it exists."

At 3:40 PM Turner replied,

> h. "It seems I'm encountering obstruction. No surprise. You will be hearing from an attorney."

At 4:12 PM Murphy responded,

> i. "Thank you.  Please have he or she contact me."

Turner concluded the December 28, 2016 correspondence with,

> j. "It will be Dave yost directly."

On December 29, Murphy responded,

> k. "Fine.  Have Mr. Yost contact me, and we will talk."

Later that day, Murphy added,

> l. "I have continued to investigate responses to your public records request regarding capital improvements to the Lyndhurst Community Center. The most recent contract at the Center involved replacement of the roof in 2015. Attached for your information is the closeout Change Order which reflects the Project, the Contractor and the final Contract amount. The legislation approving the Change Order was adopted by Council as Ordinance No. 2016-75 on September 19, 2016.
>
> m. I will do nothing further until I hear from your attorney."

{¶8} The evidence submitted in this case does not include the specifics of the "public records request made to Mrs. Kovalchik by voice mail last week," other than a general reference in Murphy's December 29, 2017 email to "your public records request regarding capital improvements to the Lyndhurst Community Center," and his provision of a 2015 contract in response to that request.  In his affidavit attached to the City's response, Murphy refers to a December 21, 2016 public records inquiry by Turner which led to a telephone conversation with him, again in general terms:

> n. "It was apparent from this conversation that Turner was concerned with a capital improvement budgetary item totaling one million dollars as well as the working of the City's animal control department."

(Murphy Affidavit at ¶ 2.)

{¶9} Next, on January 9, 2017 Turner sent an email to Murphy stating that,

o. "Under Ohio revised code 149 43 (b)(3) you need to express in writing denial of requested forms for the mayors personal expenditures separate from salary in the year 2016 Also requested is the special improvement fund expenses for same year as well as the community center expenses itemized. Also the animal control expenses. I have been told by the state auditors office, Michelle sty that these docs must be made transparent."

At 2:14 the same day, Murphy responded that,

p. "Your request has not been denied.  I simply requested clarification of the public records requested, since you were unclear as to which specific records you were requesting.  The City is not required to answer your questions, nor is it required to create records where none exist.

q. Please request records which actually exist, and they will be provided to you.  If the records requested do not exist, you will be informed of that as well."

On January 10, 2017, Turner replied,

r. "It's clear I won't get what I am asking for, or you will tell me a 2016 mayor expense report does not exist, or documents pertaining to the special improvement fund or allocation of funds for "animal control" of which 34,000 was granted, so please admit you are denying it and I can proceed.. Thank you."

On January 13, 2017, Turner sent an email to Murphy stating,

s. "Hello, I am still waiting three documents requested previously.

t. The mayors 2016 annual expense report, including anything additional to 150,000 salary

u. Any accounts payable documents or report regarding the animal control budget, which was set at 34,000

v. Any public document regarding special fund 410, for which was budgeted 1 million, 200,000

w. Please let me know the status or if these documents do not exist."

Murphy responded,

x. "You have still not requested copies of specific public records, you are simply requesting information, which is not the intent of the Statute.  The City is not required to create a document in order to answer your

questions.  Please read the Statute, a copy of which is attached to this email.

    y. In an attempt to provide to you the public records which may answer your questions, attached are the following:

- a 20 page document captioned "Expense Account Report" dated 1/04/2017 which identified the departments and the cost centers associated with the department (for example, Mayor is #7711, Community Center is #4418);
- a 257 page document captioned "Expense Audit Trail Report" dated 1/05/17 which details every transaction in 2016.

{¶10} This completes the City's response to your request."

(Response, Exhibit B.)  Notably, despite this court's May 1, 2017 order directing Turner to file "any written responses or other communications relating to the request from the city of Lyndhurst," she failed to submit the above January 13, 2017 email response from Murphy with her filing titled "All Correspondence Case # 2017-00379-PQ."  Murphy's concluding email provided her with 277 pages of documents responsive to her request, and his statement that provision of these records "completes the City's response" constituted a denial of any remaining request.

{¶11} On January 20, 2017, Turner sent an email to Lyndhurst Mayor Patrick Ward.  Without any reference to her receipt of the Expense Account Report and Expense Audit Trail Report, Turner posed questions regarding:

    z. "What services does the outsourced animal warden provide for a cost of 34,000, excluding the 1500 or so for deer killing?" and "What projects using 410 permanent improvements were made totaling over 900,000? *Your law director told me that these documents are not available or failure of disclosure, not sure.*  Making sure that's correct."

(Emphasis added.)  At 3:48 PM the same day, Mayor Ward responded by stating, in part:

    aa. "Our Director of Law, Mr. Murphy, has been kind enough to copy me on his responses to your Public Records Requests.  While we believe the answers you were seeking can be found in the documents provided he went further to suggest you could provide more specifics so that, if there is

a document that more closely matches those specifics, it could be provided so you would have the real information you seek without hunting for it."

Mayor Ward then provided a paragraph of explanation for each question in Turner's email. Turner responded at 6:05 PM with her opinions regarding domestic animal control and her understanding that sidewalks have their own project fund, and concluded,

bb. "Since I'm getting no answers on the specific projects and amounts of that fund I'm going to go forward with my state complaint.

cc. This is my last communication."

{¶12} Construing the January 9-20, 2017 correspondence in a manner most favorable to Turner, the documentation shows that Murphy urged her to utilize the previously provided minutes, ordinance, and expense reports to clarify her original public records request "made to Mrs. Kovalchik by voice mail." Turner's email of January 13, 2017, thus can be construed as the clarification requested by the City, or, in the alternative, as a new request. Her January 13, 2017 email states:

dd. "Hello, I am still waiting three documents requested previously.

ee. The mayors 2016 annual expense report, including anything additional to 150,000 salary

ff. Any accounts payable documents or report regarding the animal control budget, which was set at 34,000

gg. Any public document regarding special fund 410, for which was budgeted 1 million, 200,000"

{¶13} The Expense Audit Trail Report and Expense Account Report sent to Turner in response to this clarification on January 13, 2017 contain information directly responsive to the requests, along with other City expense information beyond that requested.[2] The Expense Audit Trail Report details debits and credits assigned to City

---

[2] On June 21, 2017, Murphy filed a CD-ROM containing the 20-page Express Account Report dated January 4, 2017, the 257-page Expense Audit Trail Report dated January 5, 2017, and copies of the City's other previous responses to Turner's requests.

Funds, including the Mayor (code 7711), Animal Control (code 1114), and the Permanent Improvement Fund (code 410).  Each debit or credit is identified by a transaction description, vendor number, invoice number, and debit/credit/other amount. The Expense Account Report details, for City accounts including the Mayor, Animal Control, and the Permanent Improvement Fund, the account budget amounts, MTD expenses, YTD expenses, encumbrances, and unencumbered balances.  Both Reports are in .pdf format, searchable by codes or key words such as Community Center, Sidewalks, etc.  Since the reports appear to contain the itemized expenses from 2016 attributable to the Mayor, and in the absence of any testimony that a separate "mayor's annual expense report" exists, I conclude that the reports satisfy Turner's request for "[t]he mayors 2016 annual expense report, including anything additional to 150,000 salary," and recommend that the motion to dismiss Turner's claim to enforce this request be GRANTED.

{¶14} With respect to Turner's request for records regarding the animal control budget, the reports provided by the City are partially, but not fully, responsive.  Having provided the report regarding the animal control budget, the City supports its denial of further response to this request on the grounds that doing so would require the City to create new documents.  (Response at p. 4.)  While the City is correct that it is not required to create new documents in response to a public records request, *State ex rel. Morgan v. City of New Lexington*, 112 Ohio St.3d 33, 2006-Ohio-6365, ¶ 30; *Salemi v. Cleveland Metroparks*, 8th Dist. Cuyahoga No. 100761, 2014-Ohio-3914, ¶ 29-30, the request for "[a]ny accounts payable documents * * * regarding the animal control budget" does not call for anything but existing documents.  The term "accounts payable documents" would encompass the 15 invoices listed on page 33 of the City's Expense Audit Trail Report.  I therefore recommend that the City's motion to dismiss be OVERRULED as to the request for these documents, and that the City be ordered to provide Turner with copies of those invoices.

{¶15} With respect to Turner's request for "[a]ny public document regarding special fund 410," the request is both ambiguous and overly broad, and was properly denied by the City after Turner had been provided multiple opportunities to revise the request based on organizational and identification information provided to her in City ordinance, expense, and audit trail documents.   R.C. 149.43(B)(2).   It is the responsibility of the person who wishes to inspect records to identify with reasonable clarity the records at issue.   *State ex rel. Zidonis v. Columbus State Community College*, 133 Ohio St.3d 122, 2012-Ohio-4228, 976 N.E.2d 861, ¶ 21.   The obligations of R.C. 149.43(B) are only invoked where a request that describes the records sought with reasonable clarity has been made. *State ex rel. Dehler v. Spatny,* 127 Ohio St.3d 312, 2010-Ohio-5711, 939 N.E.2d 831, ¶ *3*; *State ex rel. Morgan v. New Lexington*, 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208, ¶ 29; *State ex rel. Dillery v. Icsman*, 92 Ohio St.3d 312, 314, 2001-Ohio-193, 750 N.E.2d 156.   Turner's request for "any public document regarding" an entire category of City programs does not provide the City with the ability to identify a defined set of responsive records.   The word "regarding" is inherently ambiguous unless modified by more specific limiting language, such as "accounts payable documents" in the request for animal control budget records.   As used in her request for special fund 410 records, "any public document" could mean anything from the expense account reports that the City has provided, to press releases, or emails, or meeting minutes, or other unguessed documents tangentially "regarding" the special fund.   I therefore recommend that the City's motion to dismiss be GRANTED as to the request for documents regarding special fund 410 records.

{¶16} The parties retain the ability to continue negotiating their respective interests in obtaining and providing any records that Turner seeks.   The information in the provided expense reports would clearly permit Turner to identify and request additional specific records listed there, by invoice or other identifying criteria.   In its correspondence, Lyndhurst offered to discuss narrowing the request to help identify the

actual, existing records that Turner desires. Such discussions are favored by the courts, and could profitably include Lyndhurst referring Turner to its records retention schedules relevant to the request, and Turner narrowing her request with this and other information provided through discussion. *Nat'l Fedn. of the Blind of Ohio v. Ohio Rehab. Servs. Comm'n*, 10th Dist. Franklin No. 09AP-1177, 2010-Ohio-3384, ¶ 39. The parties are encouraged to cooperate going forward to achieve mutually acceptable resolution of their interests. *See State ex rel. Morgan v. Strickland*, 121 Ohio St.3d 600, 2009-Ohio-1901, ¶ 18-20.

**Conclusion**

{¶17} Upon consideration of the pleadings and attachments, I find that Lyndhurst promptly provided reports responsive to Turner's requests for "mayors 2016 annual expense report, including anything additional to 150,000 salary," and "report regarding the animal control budget." The records provided rendered Turner's requests for production of these reports moot. I further find that Turner has failed to establish by clear and convincing evidence that the City of Lyndhurst violated division (B) of R.C. 149.43 with respect to her request for "[a]ny public document regarding special fund 410," as this is an improperly ambiguous and overly broad request. R.C. 149.43(B)(2). I recommend that the City's motion to dismiss for failure to state a claim pursuant to Civ.R. 12(B)(6) be GRANTED as to these claims.

{¶18} I further find that Turner has established by clear and convincing evidence that Lyndhurst has violated division (B) of R.C. 149.43 with respect to her request for "[a]ny accounts payable documents * * * regarding the animal control budget" for 2016, and recommend that Lyndhurst be ordered to provide Turner with copies of the 2016 invoices listed in the Expense Audit Trail Report as pertaining to the animal control budget.

{¶19} I find that the majority of Turner's claim was rendered moot prior to her filing this action, and the few records ordered produced are *de minimus*. Overall, the

City did not act unreasonably in seeking clarification of Turner's ambiguous requests, including providing reports and other records to either answer her questions, or assist her in fashioning properly specific requests. *State ex rel. Strothers v. Keenon*, 8th Dist. Cuyahoga No. 103313, 2016-Ohio-405, ¶ 30.  I therefore recommend that Turner be entitled to recover the amount of the filing fee under R.C. 2743.75(F)(3)(b), but that the parties share the court costs equally.

{¶20} *Pursuant to R.C. 2743.75(F)(2), either party may file a written objection with the clerk of the Court of Claims of Ohio within seven (7) business days after receiving this report and recommendation.  Any objection shall be specific and state with particularity all grounds for the objection.  A party shall not assign as error on appeal the court's adoption of any factual findings or legal conclusions in this report and recommendation unless a timely objection was filed thereto.  R.C. 2743.75(G)(1).*


_____
JEFFERY W. CLARK
Special Master


cc:

Elaine Turner                          Raymond J. Schmidlin, Jr.
1395 Richmond Road                 840 Brainard Road
Lyndhurst, Ohio 44124              Highland Heights, Ohio 44143


**Filed July 25, 2017**
**Sent to S.C. Reporter 8/7/17**