[Cite as *State ex rel. Standifer v. Cleveland*, 2021-Ohio-3100.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE EX REL., LAUREN "CID"
STANDIFER, ET AL.,                          :

      Relator,                              :

                         No. 110200

      v.                                    :

                              :

CITY OF CLEVELAND,

      Respondent.                           :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** WRIT DENIED
**DATED:** September 3, 2021

---

Writ of Mandamus
Motion No. 547145
Order No. 548309

---

## *Appearances:*

First Amendment Clinic, Milton A. Kramer Law Clinic Center, Case Western Reserve University School of Law, Andrew Geronimo, Supervising Attorney, and Calvin J. Freas, Certified Legal Intern, *for relator*.

Barbara A. Langhenry, Cleveland Director of Law, and William M. Menzalora, Chief Assistant Director of Law, and Timothy J. Puin, Assistant Director of Law, *for respondent*.

MARY J. BOYLE, A.J.:

{¶ 1} On December 31, 2021, the relators, Lauren "Cid" Standifer and Euclid Media Group, LLC, commenced this public records mandamus action to compel the respondent, the city of Cleveland, to release all reports of use of force incidents between January 1, 2019, and the date the record is generated. Thus, the focus of this public records mandamus action is the "use of force reports" that Cleveland police officers must complete each time an officer uses force. The relators obtained the questionnaire that the officers must use to enter the information, and they asked for the completed forms.

{¶ 2} Pursuant to mediation, this court's direction, and the parties' efforts to resolve their differences, Cleveland disclosed the reports, including the narrative sections, of the use of force reports not under investigation at the time of release. However, Cleveland withheld 87 reports that are still under investigation. Pursuant to court order, Cleveland submitted copies on CD discs of the reports released, and the narrative sections of those reports not released for in camera inspection. The parties have submitted dispositive motions and have briefed the remaining issue, whether the withheld reports are confidential law enforcement investigatory records ("CLEIR") under R.C. 149.43(A)(2). The court has conducted its in camera inspection, and this matter is ripe for resolution.

## Factual and Procedural Background

{¶ 3} In 2015, Cleveland and the United States Justice Department entered into a court-approved settlement agreement regarding, inter alia, the Cleveland

Division of Police's use of force. As part of implementing this settlement agreement, Cleveland revised its "use of force" policies and procedures. This included better defining "use of force," adopting de-escalation techniques, and reporting uses of force. The settlement agreement provided that there would be a data analysis and collection coordinator to ensure the creation and maintenance of a reliable and accurate electronic system to track all data from use of force. (2018 Use of Force Report, attached to the relator's complaint as an exhibit.)

{¶ 4} Thus, whenever an officer uses force, the officer must complete a "Use of Force Report." The report requires the date, time, location, weather, and lighting conditions of the incident. There are also fields for the names and descriptions of the people involved, and any type of injuries sustained or inflicted. The "Incident Summary" section requires the officer to report the following: (1) the reason for initial police presence, such as reports of domestic violence or aggravated robbery; (2) specific description of acts that preceded the use of force, such as suspect refused to follow police commands, suspect was yelling profanities and threats, or suspect started to run away; (3) attempts to de-escalate, such as calling for more officers, allowing the person to vent, or giving clear commands and time to respond; (4) level of resistance encountered, such as suspect tried running away, took fighting stance, or tightened muscles; and (5) complete and accurate description of every type of force used or observed, such as drawing a weapon, using a Taser, or a description of tackling and joint manipulation to handcuff a suspect.

{¶ 5} Following these sections, there is a chain of command section in which supervisors review and evaluate the appropriateness of the use of force. This chain of command goes from sergeant to lieutenant to commander to deputy chief. During this chain of command review, "the police officers involved often are not even aware that the use of force incident is still considered an open matter." (Affidavit of Sergeant Maria Stacho, the IAPro/Blue Team Administrator.)[1]

{¶ 6} On September 9, 2020, the relators submitted an electronic public records request for "all reports on use of force incidents between January 1, 2019 and the date the record is generated." Cleveland responded that there were 342 use of force reports generated in 2019, and 191 thus far in 2020. The relators replied that they were not requesting the number of reports but the actual reports produced by the officers describing each incident. Cleveland responded that it was not required to do a file-by-file review from 2019 to the present because that would be a complete duplication of records and that the request is vague and overly broad. Cleveland cited to *State ex rel. Dillery v. Icsman,* 92 Ohio St.3d 312, 2001-Ohio-193, 750 N.E.2d 156, and *State ex rel. Glasgow v. Jones,* 199 Ohio St.3d 391, 2008-Ohio-4788, 894 N.E.2d 686, in support of its position.

{¶ 7} On October 29, 2020, the relators submitted another electronic public records request for all reports on use of force incidents that occurred on May 30, and June 1, 2020. The relators clarified that they were not requesting the

---

[1] IA Pro is the software used for storing uses of force data.

number of incidents, but the reports produced by officers describing each individual incident. On November 16, 2020, Cleveland denied this request by stating that the "information requested is part of an open ongoing investigation and not releasable at this time based on the confidential law enforcement investigatory record exception in R.C. 149.43 (A)(1)(h), (A)(2)."

{¶ 8} On November 18, 2020, the relators submitted another electronic public records request for all use of force reports filed in June 2019. This time Cleveland disclosed a list of the use of force reports stating their file number, incident number, and date of occurrence. Essentially, it was a list of numbers. Cleveland also released some police reports making standard redactions, such as, social security numbers, telephone numbers, and motor vehicle and driver records information.

{¶ 9} On December 10, 2020, the relators filed the final electronic public records request and asked for the use of force reports identifying them by the use of force report file number disclosed by the last request. When Cleveland did not disclose the actual reports, the relators commenced this mandamus action.

{¶ 10} On February 10, 2021, after court-directed mediation, Cleveland release three Excel spreadsheets describing use of force incidents in 2019, 2020, and 2021.[2] The relators objected that some reports were withheld pursuant to the

---

[2] Thus, the "subset" requests of October 29, November 18, and December 10, 2020, were incorporated into the master request of September 9, 2020, and the parties agreed to expand the request to include reports from 2021.

confidential law enforcement investigatory exception, and some of the officer narratives were truncated to 150 words, apparently because of computer limitations.

{¶ 11} The parties continued to resolve their differences, and by May 14, 2021, they had resolved all issues regarding the partial records produced. However, Cleveland withheld in their entirety 87 use of force reports on the basis of the confidential law enforcement investigatory record exemption. This is the remaining issue to be decided.

Discussion of Law

{¶ 12} The requisites for mandamus are well established: (1) the relator must have a clear legal right to the requested relief, (2) the respondent must have a clear legal duty to perform the requested relief, and (3) there must be no adequate remedy at law. *State ex rel. Harris v. Rhodes,* 54 Ohio St.2d 41, 374 N.E.2d 641 (1978). Mandamus is an extraordinary remedy that is to be exercised with caution and only when the right is clear. It should not issue in doubtful cases. *State ex rel. Taylor v. Glasser,* 50 Ohio St.3d 2d 165, 364 N.E.2d 1 (1977); *State ex rel Shafer v. Ohio Turnpike Comm.*, 159 Ohio St. 581, 113 N.E.2d 14 (1953). Furthermore, the court has discretion in issuing mandamus. *State ex rel. Pressley v. Indus. Comm. of Ohio,* 11 Ohio St.2d 141, 228 N.E.2d 631 (1967).

{¶ 13} There are peculiar principles to public records mandamus actions. Pursuant to R.C. 149.43, mandamus is the appropriate remedy to compel compliance with Ohio's Public Records Act. *State ex rel. Vindicator Printing Co. v. Youngtown,* 104 Ohio St.3d 1436, 2004-Ohio-7079, 819 N.E.2d 1120. Because the

statute specifies mandamus as the remedy, the relator does not have to show the lack of an adequate remedy at law to prevail. *State ex rel. Morgan v. New Lexington,* 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208. As with all writ actions, the relator must establish the right to a writ by clear and convincing evidence. *Pressley*; and *State ex rel. Pietrangelo v. Avon Lake,* 149 Ohio St.3d 273, 2016-Ohio-5725, 74 N.E.2d 419. The requester must request records before bringing the mandamus action, and the "request must be specific and particularly describe what it is that is being sought." *State ex rel. Zauderer v. Joseph,* 62 Ohio App.3d 752, 756, 577 N.E.2d 444 (10th Dist.1989).

{¶ 14} In Ohio, public records are the people's records. To that end, the public records act is to be construed liberally in favor of broad access and disclosure. The courts are to resolve any doubt in favor of disclosure. *Vindicator, supra.* Exemptions to disclosure under the Public Records Act must be strictly construed against the public records custodian, and the government bears the burden of establishing the applicability of an exception. *Morgan* at ¶ 47.

{¶ 15} R.C. 149.43(A)(1)(h) provides in pertinent part that "Public record" does not mean any of the following: Confidential law enforcement investigatory records. R.C. 149.43(A)(2) defines confidential law enforcement investigatory record as "any record that pertains to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, but only to the extent that the release of the record would create a high probability of disclosure of any of the following: (a) the identity of a suspect who has not been charged with the offense to which the record

pertains * * *." The subsection further includes information sources, or witnesses to whom confidentiality has been reasonably promised, specific confidential investigatory techniques, specific investigatory work product, and information that would endanger the life or physical safety of law enforcement personnel, crime victims, witnesses, and confidential information sources.

{¶ 16} The court has reviewed the submitted material. Because the use of force reports are being prepared pursuant to a settlement agreement between Cleveland and the Department of Justice and because each report is reviewed by the chain of command of the police division to determine whether the use of force was appropriate, this court is convinced that the withheld records are law enforcement investigatory records. They are not incident reports as mentioned in *State ex rel. Beacon Journal Publishing Co. v. Univ. of Akron,* 64 Ohio St.2d 392, 415 N.E.2d 310 (1980). The use of force reports are prepared to monitor and discipline the police to make sure excessive force is not being used.

{¶ 17} The remaining issue is whether these reports are confidential. This court holds that they are confidential because their release would create a high probability of disclosure of the identity of the suspect, the officer using the force. These officers often do not know that they are still under investigation, but they would recognize the incidents they reported if these records were prematurely released to the public. Thus, information in the reports are so intertwined with the identity of the suspect that effective redactions could not be made. *State ex rel. McGee v. Ohio State Bd. of Psychology,* 49 Ohio St.3d 59, 550 N.E.2d 945 (1990).

Accordingly, this court denies the application for a writ of mandamus to compel the disclosure of the use of force reports that are still being reviewed. However, nothing in this opinion should be considered as preventing or precluding their release once the reviews have been completed. Similarly, nothing in this opinion precludes future public records requests for the currently withheld records.

{¶ 18} The relators may submit an appropriate motion pursuant to R.C. 149.43(C) within two weeks of the release of this opinion. Cleveland shall have two weeks to respond from the date of the filing of the motion.

{¶ 19} Writ denied.

_____
MARY J. BOYLE, ADMINISTRATIVE JUDGE

FRANK D. CELEBREZZE, JR., J., and
LISA B. FORBES, J., CONCUR