[Cite as *State ex. rel. Crenshaw v. E. Cleveland Fin. Dept.*, 2022-Ohio-2134.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE EX REL., MARIAH S.　　　　：
CRENSHAW,

     Relator,　　　　　　　　：

                　　　　　　　No. 110891

     v.　　　　　　　　　　：

CITY OF EAST CLEVELAND
FINANCE DEPARTMENT,　　　　：

     Respondent.　　　　　　：

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** COMPLAINT DISMISSED
**DATED:** June 17, 2022

---

Writ of Mandamus
Order No. 555526

---

### *Appearances:*

Mariah S. Crenshaw, *pro se.*

Willa M. Hemmons, East Cleveland Director of Law, and Heather McCollough, Deputy Director of Law, *for respondent.*

FRANK DANIEL CELEBREZZE, III, P.J.:

{¶ 1} On October 8, 2021, the relator, Mariah Crenshaw ("Crenshaw") commenced this public records mandamus action against the respondent, the city of East Cleveland Finance Department ("East Cleveland"). Crenshaw seeks, inter

alia, the payroll records of East Cleveland's law director and assistant law director, the personnel and disciplinary files of two police officers, specific financial records, the police investigatory files for the homicide of Kevin Olds, and the required records commission's records for any missing or destroyed records. Because East Cleveland has stated that some records are no longer available, Crenshaw also claims damages for spoliation and forfeiture of records, along with statutory damages pursuant to R.C. 149.43(C).

{¶ 2} Crenshaw made the following specific requests: (1) On September 6, 2021, she requested by email the payroll records for Heather McCollough, East Cleveland's assistant law director, including overtime, vacation, bonuses, breakdowns in the ledger accounts, and separation pay. (2) On September 10, 2021, Crenshaw requested by email the personnel and disciplinary files for two police officers, Tristan Homan and Jason Anderson. This included, applications, oaths of office, SF400 forms, screening of officers training, cease function and reinstatement letters, emails from the Ohio Attorney General's Office of the Ohio Peace Officer Training Academy ("OPOTA"), discipline, anything typically found in personnel files, photographs, action forms, training records, school transcripts, citizen complaints, proof of licensure, background checks, daily observation reports by superiors, annual gun requalifications, and training certificates. (3) On July 1, 2021, Crenshaw requested by email the homicide investigatory file for victim Kevin Olds that occurred in October 1988. Further, if any of these records had been destroyed, she asked for the records commission's meeting minutes, which granted the

destruction of the records and the public notice stating the intent to destroy the records. On September 28, 2021, she requested by email the certificate of disposal for any such missing files. (4) On September 29, 2021, Crenshaw requested by email the financial general ledgers of disbursement made to Willa Hemmons and Heather McCollough, including her separation pay and the general ledger accounts that support McCollough's separation pay; a copy of the current budget of 2021; and a report reflecting receipts of and disbursement for 2020 Cares Stimulus funds. (5) On October 1, 2021, again through email Crenshaw asked for invoices paid out for the following expense accounts with their supporting invoices: Account 1110.2110.5246 jail repair in the amount of $213; Account 1110.2110.5248 clothing expenses in the amount of $58,180; Account 1110.2110.5252 equipment expenses in the amount of $39,638; Account 1110.2120.5234 in the amount of $126,493.84 for professional expenses; Account 1110.2714.5238 in the amount of $220,907.26 for grass cutting as a law department expense; Account 1110.2714.5239 in the amount of $411,364.06 as a law department expense; Account 1110.2714.5243 for repair and maintenance as a law department expense; Account 1110.2714.5280 in the amount of $66,911.11 for electric as a law department expense; Account 1110.2714.5282 in the amount of $25,422.58 for natural gas as a law department expense; Account 1110.2714.5283 in the amount of $50,556.22 for telephone expense as a law department expense; and Account 1110.2714.5418 in the amount of $13,751.07 for water and sewer expense as a law department expense. Crenshaw asked that these records be delivered by email or put on a CD disc and sent to her. However, on

October 4, 2021, she stated in an email that Mr. Iyahen, the finance director, should prepare the records for public inspection and that she would come in and inspect them.

{¶ 3} Crenshaw also requested that if records were not disclosed or if records were redacted or not provided in the requested form, that East Cleveland provide the legal basis for such action complete with supporting legal authority. The attachments to the complaint show that East Cleveland countered with multiple case citations that a governmental entity has no duty to provide records it does not have and no duty to make records to fulfill a request. Nor does a governmental entity have a duty to keep records in any particular manner, even if the requester thinks the records should be kept in that particular manner. East Cleveland further stated that the need to make redactions required that paper copies be made and then redacted. Crenshaw then commenced this mandamus action.

{¶ 4} On October 21, 2021, pursuant to Loc.App.R. 20(B)(2), this court ordered the matter to mediation. However, by the beginning of the new year, mediation had not been able to resolve the case. Thus, on January 10, 2022, this court ordered the parties to certify the status of the case by stating for each request what records had been released. If East Cleveland had withheld records or made redactions, it was to state with supporting legal authority why the records were withheld or redacted. If Crenshaw was not satisfied with the disclosures, she was to state what records she thought should be produced and why she believed they were available.

{¶ 5} On January 14, 2022, East Cleveland filed its certification. It stated that the payroll records for Heather McCollough were sent to Crenshaw on September 28, 2021, on two pages: one containing the payroll records; the second page was completely redacted because it contained personal privacy information. Attachments to the complaint showed this. The two police officers' personnel and disciplinary files were ready in paper form upon the payment of $23.60, which Crenshaw had not paid. The "financial general ledgers for the disbursements to Heather McCollough and Willa Hemmons" could not be fulfilled because East Cleveland does not keep its records that way; the certification stated that "Ms. Crenshaw is free to revise her request and submit it again." The 2021 budget and the receipts and disbursement for the 2020 Cares Stimulus funds were emailed to Crenshaw at no cost. Exhibit A to the certification indicates that these records were released on or after October 28, 2021.

{¶ 6} As for the 12 expense accounts, the certification said that the finance director decided a few days before the drafting of the certification that he would make the voluminous records available for inspection, rather than risk making the many copies and having Crenshaw not pay for them. He also indicated that the telephone expenses and the water and sewer expenses were not law department expenses, and thus he could not honor the requests as written. Again, Crenshaw was permitted to clarify her request.

{¶ 7} The final request was for the homicide file for Kevin Olds from 1988. These records could not be located. Initially, it was thought that the files were

destroyed when the storage building's roof collapsed during a storm and the room was flooded. Then it was determined that Kevin Olds died in 1998 when struck by a train. The coroner determined that the death was accidental. Thus, no homicide file was ever created. As for the records commission's records for destroyed or missing files, the law director in a November 3, 2021 email explained that the Records Retention Custodian/Commission Chair had been fired and his successor was unable to retrieve the minutes. The law director cited *State ex rel. Kerner v. State Teachers Retirement Bd.*, 82 Ohio St.3d 273, 695 N.E.2d 256 (1998), for the principle that a governmental entity does not have the responsibility to disclose nonexistent records.[1]

{¶ 8} Crenshaw filed her initial certification on January 21, 2022. Initially, she complained that the finance director asked that the requests not be sent to him directly, as compared to the law department; Crenshaw submitted that the finance director was evading his responsibility as a public officer to comply with R.C. 149.43. Crenshaw further complained that if East Cleveland maintained their financial records like the entities she used to work for, there would be no problem fulfilling her requests. She stated that she did not get the records relating to Hemmons.

{¶ 9} Crenshaw admitted that she did receive redacted records for McCollough's payroll, but there were no explanations for the redactions as required

---

[1] East Cleveland's certification also addressed several other public records requests made by Crenshaw that were not listed in her complaint. The court is limiting its analysis to only those requests made in the complaint.

by law. She further certified that she had not received the general ledger reflecting where the funds were debited for McCollough's separation pay or the necessary approval for those funds.

{¶ 10} Crenshaw agreed that she did not get the personnel files for the two police officers and insisted on her right to have them sent to her electronically as she requested. Similarly, she complained that she did not get any records commission documents that are required by law to be kept. She also accused East Cleveland of negligent care of public records and violating the law relating to their disposal.

{¶ 11} Finally, Crenshaw states the full investigation for the death of Kevin Olds should still be within the custody of the city or a certificate of disposal should be available stating the disposition of the public records. Crenshaw attached to her certification a "Coroner's Office Cuyahoga County, Ohio Vital Statistic Report" for Kevin Olds from October 1998 that listed the cause of death as "Blunt impacts to the head with skull and brain injury TRAIN ACCIDENT, TRESPASSER." She also attached the first page of an East Cleveland Police Department supplementary report for Kevin Olds. This states how the body was found and what steps were taken next, including turning over the body to the coroner's office. It also includes a statement from a special agent from the railroad that Olds's body was in too good of shape to be hit by a train. From this, Crenshaw concludes that there must be additional police investigatory records relating to Olds's death.

{¶ 12} On February 11, 2022, this court issued a briefing schedule. By April 11, 2022, the parties were to complete discovery and submit evidence and

briefs on all the issues, including whether this court has jurisdiction to adjudicate a spoliation claim in a public records mandamus action. The court encouraged the parties to resolve their differences and arrange for the release of the requested records. This order directed East Cleveland to submit any withheld or redacted records under seal for in camera inspection and to state what legal authority supports its position. Similarly, the court ordered Crenshaw to certify whether she was satisfied with the disclosures, and if not, what additional records should be released or unredacted with supporting legal authority. Reply briefs were due on April 22, 2022.

{¶ 13} Crenshaw filed a status update March 29, 2022, in which she stated that on March 11, 2022, East Cleveland provided her with partial files for the two police officers. On March 14, 2022, she informed East Cleveland of the missing statutorily required records from those files. These included the SF400 forms, the "cease function" letter, the reinstatement letter, basic training certificates, school transcripts, annual gun requalification, and other training certificates. Crenshaw also admitted that on March 14, 2022, she made an in person inspection of records and paid $28 for 213 copies of records that included audit trails.[2]

{¶ 14} On April 8, 2022, Crenshaw filed her certification. Crenshaw states that she received McCollough's payroll printout with redactions, but there were no

---

[2] Crenshaw also paid $28 for records on March 4, 2022. She complains that she overpaid because the records provided included duplicates and records she did not want. However, she does not identify those records or the request for which they were provided.

written explanations for the redactions. Moreover, she did not receive the ledger breakdown of the $15,000 separation payout, nor did she receive an explanation for why these records were not provided.

{¶ 15} For the 12 account expenses, Crenshaw certifies that on March 14, 2022, she received the requested records, except for Account 1110.2714.5243 the repair and maintenance expense as a law department expense and Account 1110.2714.5283 for telephone expenses in the amount of $50,556.22, as a law department expense. For the repair and maintenance expense account, she admits that she received some of the requested records, but not the audit trail. For the telephone expense, her certification indicates that she wants the supporting invoices.

{¶ 16} Crenshaw's certification repeats her earlier certification concerning the personnel files for the two police officers. Many records were disclosed, but the SF400 form for Officer Anderson was missing, along with complete records for screening officer training, action forms, grievances, records of disciplinary proceedings, school transcripts, proof of licensure, background checks containing education and resume, daily observation reports by supervisors, OPOTA certificates, and advanced training certificates.

{¶ 17} Similarly for Officer Homan, Crenshaw certified the SF400 form, action forms, training records, disciplinary files, school transcripts, daily observations reports, OPOTA certificates, and advanced training certificates are missing. For Officer Homan, she stated that only some of the officer training records

were provided. She noted that some of these records, such as cease function letters, reinstatement letters, training records, annual gun requalifications, the OPOTA certificates, and the advanced training certificates are statutorily required.

{¶ 18} Crenshaw certified that no records had been provided for the homicide investigation file for Kevin Olds. Furthermore, she complained that East Cleveland has not provided her with a written legal explanation for missing, destroyed, or transferred records, nor has East Cleveland provided her with a certificate of disposal pursuant to R.C. 149.333. Indeed, East Cleveland has not had the statutorily required records commission to fulfill the statutorily required duties.

{¶ 19} On April 11, 2022, East Cleveland filed records under seal with a brief entitled, "Submission of Records Under Seal." In this filing, East Cleveland explained that it could no longer find an unredacted copy of the second page recording the disbursement to McCollough. Efforts to provide the second page included contacting ADP Management, the company that handles the city's payroll, but it appears that the company no longer stores the information or that it is lost in archives. The person who initially redacted the second page no longer works for the city, and the city cannot access his stored information. The chief accountant for the city of East Cleveland submitted an affidavit that she has been unable to retrieve an unredacted copy of the second page, including seeking it from ADP Management. In an effort to provide Crenshaw with the requested information, it submitted McCollough's paystubs to Crenshaw.

{¶ 20} East Cleveland submitted Officer Anderson's personnel file under seal. The in camera inspection showed that his SF400 form and oath of office are included. East Cleveland also proffered explanations why some records might not be included in the file, such as the time for gun requalification had not expired.

{¶ 21} On April 14, 2022, Crenshaw filed a reply stating that she was not satisfied with the disclosures. Specifically, for McCollough's separation pay, she never received the requested audit trail or the general ledgers reflecting the disbursement. Moreover, based upon her experience with ADP Management, she contends that there should be no trouble accessing records for the last seven years. She further complained that a breakdown of payroll dates and amounts is not what she requested, and East Cleveland merely provided records not sought.

{¶ 22} Crenshaw admitted that Anderson's SF400 form with oath of office has been disclosed to her but complained that it is incomplete because it appears not to be approved by the OPOTA's executive director. She noted that when she made a public records request to OPOTA for Officer Anderson's records, it did not have his SF400. Similarly, East Cleveland did not submit a "cease function letter" or reinstatement letter for Officers Anderson and Homan, which also should have been in their files. She concluded that the city did not submit his SF400 form to OPOTA or its executive director. Crenshaw admitted that she did receive Officer Anderson's Refresher Course certificate, but it was 188 days after the filing of the mandamus action.

{¶ 23} Similarly, Crenshaw admitted that she belatedly received a gun scorecard for Anderson. However, she argued that her request was not fulfilled because there were no gun requalifications for all duty weapons, such as the squad car rifles. She further complained that the explanations given for missing records do not comply with R.C. 149.43 because they lack supporting legal authority.

{¶ 24} Crenshaw concluded that East Cleveland failed to report to the state of Ohio the hiring of Officer Anderson in 2021, and that statutorily required records were never created. Furthermore, East Cleveland is deficient in complying with R.C. 149.43 by supplying personal opinion or ad hominem attacks on Crenshaw for missing records instead of legal authority or admitting that it did not create statutorily required records.

{¶ 25} On April 22, 2022, East Cleveland filed a motion to dismiss on the grounds of mootness, because all possible records have been released. Attached were emails, a photograph, and additional records. The court takes this as an additional certification and submission of evidence.

{¶ 26} East Cleveland first endeavored to clarify that there are no police investigatory files for the homicide of Kevin Olds. As shown by the "Coroner's Verdict," which East Cleveland attached as an exhibit, Olds's death was ruled as a train accident. Therefore, no police investigatory records exist, except what Crenshaw already has. If there never were any police investigatory files, there could be no records commission minutes approving of their disposal or certificates of disposal. Crenshaw's insistence for those records is baseless.

{¶ 27} East Cleveland also responded to Crenshaw's complaint that not all of Officer Homan's records were provided. East Cleveland submitted Officer Homan's personnel file for in camera inspection and indicated where in the file the disputed records were.

{¶ 28} Finally, East Cleveland explained that the two accounts (Account 1110.2714.5243 law department repair and maintenance expense and Account 1110.2714.5283 law department telephone expense) that Crenshaw complains were not fulfilled could not be released because the accounts were not kept as law department accounts. Thus, East Cleveland was not sure exactly what Crenshaw was requesting. Furthermore, Crenshaw never clarified her request, despite East Cleveland asking her to do so.

{¶ 29} On April 23, 2022, Crenshaw filed her brief in opposition to the motion to dismiss, arguing that East Cleveland's motion was improper and beyond this court's order for certification, briefing, and evidence. Moreover, the motion contained irrelevant material on Crenshaw's other public records requests. She did not contradict East Cleveland's last statements that she had not revised her requests for the two unfulfilled accounts.

{¶ 30} The court notes that this litigation was very contentious with both parties accusing the other of bad faith and incompetence.

## DISCUSSION OF LAW

{¶ 31} Mandamus is the appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act. *State ex rel. McCaffrey v. Mahoning Cty.*

*Prosecutor's Office*, 133 Ohio St.3d 139, 2012-Ohio-4246, 976 N.E.2d 877.[3] Because the statute specifies mandamus as the remedy, the relator does not have to show the lack of an adequate remedy at law to prevail. *State ex rel. Morgan v. New Lexington*, 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208. As with all writ actions, the relator must establish the right to a writ by clear and convincing evidence. *State ex rel. Pressley v. Indus. Comm. of Ohio*, 11 Ohio St.2d 141, 228 N.E.2d 631 (1967); and *State ex rel. Pietrangelo v. Avon Lake*, 149 Ohio St.3d 273, 2016-Ohio-5725, 74 N.E.3d 419. The requester must request records before bringing the mandamus action, and the "request must be specific and particularly describe what it is that is being sought." *State ex rel. Zauderer v. Joseph*, 62 Ohio App.3d 752, 756, 577 N.E.2d 444 (10th Dist.1989).

{¶ 32} In Ohio, public records are the people's records. To that end, the public records act is to be construed liberally in favor of broad access and disclosure. The courts are to resolve any doubt in favor of disclosure. *State ex rel. Vindicator Printing Co. v. Youngstown*, 104 Ohio St.3d 1436, 2004-Ohio-7079, 819 N.E.2d 1120. Exemptions to disclosure under the public records act must be strictly construed against the public records custodian, and the government bears the burden of establishing the applicability of an exception. *Morgan* at ¶ 47.

---

[3] The requisites for mandamus are well established: (1) the relator must have a clear legal right to the requested relief, (2) the respondent must have a clear legal duty to perform the requested relief, and (3) there must be no adequate remedy at law. *State ex rel. Harris v. Rhodes*, 54 Ohio St.2d 41, 374 N.E.2d 641 (1978).

{¶ 33} However, the government has no duty under R.C. 149.43 to give information or to create new records by searching for and compiling information from existing records. *State ex rel. Lanham v. Ohio Adult Parole Auth.*, 80 Ohio St.3d 425, 687 N.E.2d 283 (1997); and *State ex rel. White v. Goldsberry*, 85 Ohio St.3d 153, 707 N.E.2d 496 (1999). Similarly, there is no duty to produce records that never existed or no longer exist. *Pietrangelo* at 273. "Thus, to obtain mandamus relief, the relator must show, by clear and convincing evidence, that public records, he or she requested exist and are in possession of the respondent." *Crenshaw v. City of Cleveland Law Dept.*, 8th Dist. Cuyahoga No. 108519, 2020-Ohio-921, ¶ 39.

{¶ 34} Mandamus is an extraordinary remedy that is to be exercised with caution and only when the right is clear. It should not issue in doubtful cases. *State ex rel. Taylor v. Glasser*, 50 Ohio St.2d 165, 364 N.E.2d 1 (1977); *State ex rel. Shafer v. Ohio Turnpike Comm.*, 159 Ohio St. 581, 113 N.E.2d 14 (1953).

{¶ 35} Furthermore, the court has discretion in issuing mandamus. In *State ex rel. Pressley*, 11 Ohio St.2d 141, 228 N.E.2d 631, at paragraph seven of the syllabus, the Supreme Court of Ohio ruled that "in considering the allowance or denial of the writ of mandamus on the merits, [the court] will exercise sound, legal and judicial discretion based upon all the facts and circumstances in the individual case and the justice to be done." The court elaborated that in exercising that discretion the court should consider

> the exigency which calls for the exercise of such discretion, the nature and extent of the wrong or injury which would follow a refusal of the writ, and other facts which have a bearing on the particular case. * * *

> Among the facts and circumstances which the court will consider are the applicant's rights, the interests of third persons, the importance or unimportance of the case, the applicant's conduct, the equity and justice of the relator's case, public policy and the public's interest, whether the performance of the act by the respondent would give the relator any effective relief, and whether such act would be impossible, illegal, or useless.

*Id.* at 161-162. *State ex rel. Bennett v. Lime*, 55 Ohio St.2d 62, 378 N.E.2d 152 (1978); and *State ex rel. Dollison v. Reddy*, 55 Ohio St.2d 59, 378 N.E.2d 150 (1978).

{¶ 36} Crenshaw's first request was for the payroll records for Heather McCollough, including overtime, vacation, bonuses, and separation pay. In response, East Cleveland provided a page summary for McCollough, that included regular time, comp time, holiday, Hazard Dif Pol, sick time, and separation time. There was also a second page that was completely redacted on the grounds that it contained private information, a recognized exemption.

{¶ 37} East Cleveland was unable to provide an unredacted copy of the second page, because it was lost, and efforts to retrieve it from the record management company were not successful, as evidenced by the affidavit of East Cleveland's chief accountant. Instead, East Cleveland provided Crenshaw with all of McCollough's pay stubs for the relevant period. Crenshaw countered that the pay stubs were unsolicited records and that in her experience the management company should be able to provide the unredacted second page.

{¶ 38} Although the disappearance of the second page is problematic, the court declines to issue a writ of mandamus for a record that it is not certain is

available.  Crenshaw's unsworn remarks that it should be available is not clear and convincing evidence that the record is available.

{¶ 39} Crenshaw's second request was for the personnel and disciplinary files for two police officers.  The request specified, inter alia, their applications, SF400 forms, oaths of office, training records, cease functions and reinstatement letters, emails from OPOTA, photographs, school transcripts and records, complaints, and disciplinary matters.  East Cleveland released the files to Crenshaw and submitted them to this court for in camera inspection.  Crenshaw mainly complains that various, statutorily required forms are not in the files and that East Cleveland should have just stated that the records were never created.  Indeed, in her April 14, 2022 reply brief, she stated that reasonable minds could conclude that the statutorily required records were never created.

{¶ 40} The court has reviewed the two files in camera and found no internal inconsistencies to indicate that other requested records exist in the files.  Crenshaw's argument that the records should be there is not clear and convincing evidence that they exist.  Thus, the court declines to issue a writ of mandamus to compel the release of records that the court is not convinced actually exist.  *Crenshaw*, 2020-Ohio-921, at ¶ 42.

{¶ 41} Among the attachments to her complaint, Crenshaw included requests for disbursements to Willa Hemmons, East Cleveland's budget for 2021, and the receipts and disbursement for 2020 Cares Stimulus funds.  East Cleveland stated that these records were provided.  Crenshaw does not deny this and does not

address these records in her April 8, 2022 "Final Certified Brief of Record Status." Accordingly, this court rules that these requests have been fulfilled.

{¶ 42} Crenshaw's next request was for 12 specified expense accounts, including audit trails and purchase orders. She admits that on March 14, 2022, she was able to inspect the files, and received 213 physical copies of audit trails and purchase orders. She further admits that 10 of the 12 requests were fulfilled. For the disputed requests for Law Department Expense Account 1110.2714.5243 for repair and maintenance expenses and Law Department Expense Account 1110.2714.5283 for telephone expenses, Crenshaw admits that she received a partial release for the repair and maintenance expenses, but that the audit trail was missing.

{¶ 43} East Cleveland countered that it could not fulfill these requests as submitted because those account numbers were not law department numbers. Thus, East Cleveland was uncertain what she wanted. East Cleveland notified her of this problem and asked her to clarify her request. There is no evidence in the record that she did so; rather, she insisted that the request be fulfilled as made.

{¶ 44} R.C. 149.43(B)(2) provides in pertinent part as follows:

> If a requester makes an ambiguous or overly broad request or has difficulty in making a request * * * such that the public officer or the person responsible for the requested public record cannot reasonably identify what public records are being requested, the public office or the person responsible for the requested public records may deny the request but shall provide the requester with an opportunity to revise the request by informing the requester of the manner in which records are maintained by the public office and accessed in the ordinary course of the public office's or person's duties.

In the present case, East Cleveland could not reasonably identify what public records were being requested, and informed Crenshaw why the request was uncertain and asked her to revise the request, which she did not do. Accordingly, the court finds that East Cleveland fulfilled its duties under R.C. 149.43(B)(2). The court declines to issue a writ of mandamus to fulfill an uncertain request.

{¶ 45} Finally, there is Crenshaw's request for the 1998 homicide investigation file for Kevin Olds. This request has been the subject of much dispute. Initially, Crenshaw framed her request for the homicide of victim "Keith Olds" from "October 1988." She also requested that if the records had been destroyed, she wanted the records commission meeting minutes, which granted the destruction of the records and the public notice stating the intent to destroy the records. She amended the request to Kevin Olds. East Cleveland initially thought that records that old were lost because they were stored in a building that flooded. However, when it was learned that Olds died in 1998 because of a train accident, East Cleveland stated that there was no homicide file. The parties submitted an initial police report about finding the body by the railroad track and turning the corpse over to the coroner, and coroner's office records finding the death to be an accident. In rebuttal, Crenshaw points to a railroad investigator's statements that the body was in too good of a condition for a train accident. From this Crenshaw asserts that Olds's death must have been a homicide and there must be a homicide investigatory file and if there is not, there must be the records for their destruction.

{¶ 46} After reviewing all of the submissions, this court rules that Crenshaw has not persuaded this court by clear and convincing evidence that a homicide file for Kevin Olds ever existed. Thus, this court declines to issue a writ of mandamus for East Cleveland to produce such records, including record commission records.

{¶ 47} In summary, the court declines to issue a writ of mandamus to compel the release of more records; East Cleveland has fulfilled its duty to release records under R.C. 149.43.

{¶ 48} In her second claim, Crenshaw seeks statutory, spoliation, and forfeiture damages. Crenshaw mainly seeks damages for the missing records relating to the criminal investigation files for Kevin Olds and the lack of the records commission's records authorizing their destruction. She also seeks such damages for any missing financial records. In her final certified brief, she clarifies that she seeks forfeiture under R.C. 149.351 and damages under the intentional tort of spoliation, as well as civil forfeiture for repeated violation of Ohio's Sunshine Laws.

{¶ 49} However, the Ohio Constitution in Article IV, Section 3(B)(1), specifically limits the courts of appeals' original jurisdiction to the five enumerated writs. *Arnoff v. State*, 9th Dist. Lorain No. 20CA011681, 2021-Ohio-883, and *State ex rel. Bosley v. D'Apolito,* 7th Dist. Mahoning No. 20 MA 0050, 2021-Ohio-2498. Therefore, this court lacks jurisdiction to rule on the forfeiture and spoliation claims. Moreover, R.C. 149.351, prohibition against destruction or damage of records, provides in division (B) that claims of forfeiture are to be commenced in the court of common pleas. Finally, as the court has already ruled, Crenshaw has failed to

establish by clear and convincing evidence that records for the criminal investigatory file have been destroyed.

{¶ 50} R.C. 149.43(C)(2) provides that if a requester transmits a written request by electronic submission, the requester shall be entitled to recover statutory damages if a court determines that the public office failed to comply with an obligation in accordance with division (B) of R.C. 149.43, e.g., an unreasonable delay in releasing the records. The amount of statutory damages shall be fixed at one hundred dollars for each business day during which the public office failed to comply with an obligation under division (B), beginning with the day on which the requester files a mandamus action to recover statutory damages up to a maximum of one thousand dollars. The award of statutory damages shall not be construed as a penalty but as compensation for the lost use of the requested information. Moreover, the Supreme Court of Ohio has ruled that the statute does not generally permit stacking of statutory damages. *State ex rel. Dehler v. Kelly,* 127 Ohio St.3d 309, 2010-Ohio-5724, 939 N.E.2d 828.

{¶ 51} In the present case, the two parties have treated each other so obstinately that the court cannot discern who is responsible for any delay in the release of the records. Under such conditions, the court declines to award statutory damages.

{¶ 52} Accordingly, this court dismisses this writ action as moot; the respondent has fulfilled its duties to release the requested records to the best of its ability. Each side to pay its own costs. This court directs the clerk of courts to serve

all parties notice of the judgment and its date of entry upon the journal as required

by Civ.R. 58(B).

{¶ 53} Writ dismissed.


_____

FRANK DANIEL CELEBREZZE, III, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
CORNELIUS J. O'SULLIVAN, JR., J., CONCUR