[Cite as *State v. Benson*, 2022-Ohio-2126.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | | JUDGES: |
| | : | | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee | : | | Hon. John W. Wise, J. |
| | : | | Hon. Craig R. Baldwin, J. |
| -vs- | : | | |
| | : | | |
| MARVIN J. BENSON, | : | | Case No. 22CA00005 |
| | : | | |
| Defendant - Appellant | : | | O P I N I O N |

CHARACTER OF PROCEEDING:            Appeal from the Guernsey County
                                    Court of Common Pleas, Case No.
                                    18-CR-98

JUDGMENT:                           Affirmed

DATE OF JUDGMENT:                   June 21, 2022

APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

LINDSEY K. ANGLER                       MARVIN J. BENSON, Pro Se
Prosecuting Attorney                    #756728
Guernsey County                         P.O. Box 788
627 East Wheeling Ave.                  Mansfield, Ohio 44901
Cambridge, Ohio 43725-2284

*Baldwin, J.*

{¶1} Defendant-appellant Marvin Benson appeals from the January 20, 2022 Entry of the Guernsey County Court of Common Pleas denying his Motion for Access to Public Records Pursuant to R.C. 149.43(B)(8). Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} On Friday, April 13, 2018, six-year-old W.M. arrived at school, and hugged his principal. W.M. participated in an event called COSI on Wheels, a field trip brought to the school building with presentations and activities for the students. Photographs taken by the school principal show W.M. enjoying participation in the activities with his peers.

{¶3} On Monday, April 16, 2018, at approximately 3:00 p.m., paramedics were dispatched to a home occupied by appellant, his girlfriend Tiera Mounts, appellant's three children, and Tiera's two children, one of whom was W.M. Upon arrival, the emergency medical technician (EMT) found a child, later identified as W.M., unresponsive on the second floor of the house. W.M. was not breathing, had no pulse, and his arm was not flexible, leading the EMT to believe the child had been dead for longer than an hour.

{¶4} Patrolman Jarod Eubanks of the Cambridge Police Department arrived on the scene. He noted the child's body was "battered and bruised." Tr. 284. Based on his observations of W.M.'s body, he requested a detective to the scene. Detective Greg Clark of the Cambridge Police Department arrived on the scene.

{¶5} Det. Clark asked appellant and Tiera Mounts to come with him to the police station, which they agreed to do. Before interviewing appellant, Det. Clark read him his Miranda rights. During the first part of the interview, appellant told police W.M. had "episodes" where he would fall down as if his legs were weak, and the bruises on W.M.'s

body were from "episodes" where he beats himself. Appellant stated Tiera disciplined W.M. by "busting his ass and like that," by making him do wall squats, and when W.M. "keeps fighting" with Tiera, she'll call her stepmom to come and get him. Appellant said Sunday night, the night before W.M. died, W.M. was "acting up real bad." They made W.M. do wall squats, but he would just stand and lean against the wall. After they got him to do the wall squats, he kept dropping to the ground and would sit there, like he didn't want to listen.

{¶6}    Appellant stated on Monday morning, April 16, W.M. did not want to get up and put his shoes on. There was vomit in W.M.'s bedroom from the night, although appellant claimed they did not hear him vomiting during the night. When W.M. kept falling, appellant put him up against the wall to do wall squats. When appellant was trying to leave to take the other children to school, W.M. put his coat on "half-assed." Appellant told police the "worst thing I did this morning was kicked him in his butt." Appellant admitted kicking W.M. out the front door of the house, where W.M. hit his head on the stoop. Although Det. Clark had noted a gash with fresh blood on W.M.'s head, Appellant claimed there was a scratch, but no blood on W.M.'s head. Appellant stated W.M. went back to bed that morning, and at one point when he woke up to use the restroom, appellant gave him cough syrup. When Tiera arrived home from work in the afternoon, appellant told her W.M. was acting "like a butt" plus W.M. had vomit to clean up in his room. Tiera went upstairs to W.M.'s room, and shortly thereafter Appellant heard her screaming.

{¶7}    After a break, Det. Clark resumed his interview with Appellant. Appellant stated he met Tiera a year ago, and as to W.M., she was "beating his ass." He stated

sometimes Tiera went pretty far and had to call her mom. Appellant stated after he "busted his butt" one time, W.M. started listening. Tiera would often say she could not handle W.M. and wanted to get rid of him.

{¶8}   Appellant told Det. Clark on the night before W.M.'s death, Tiera wasn't dealing with W.M., and told appellant to handle it. Appellant stated he put W.M. on the wall to do wall squats, and kicked W.M.'s feet out from under him. Appellant tossed W.M., and he hit a space heater or radiator. Appellant stated when he fell and hit his head on the radiator, W.M. laid there "with that defiant look that he does." Appellant picked him up and said, "Get your ass back on the wall." W.M. got back on the wall, but kept spitting and trying to hit Appellant. Tiera told appellant to hit him back, and appellant kicked W.M. in the stomach. W.M. fell over. Appellant tossed W.M. a second time, and kicked W.M. again while he was laying on the ground. Appellant admitted several times to kicking W.M. twice on Sunday night and once on Monday morning, and to throwing W.M. across the room twice. Appellant also told police Tiera threw W.M. once on Sunday night, and kicked his feet out from under him. When W.M. kept "acting up", Tiera told appellant to put him in the shower.

{¶9}   Dr. Sandra Schubert, the Guernsey County Coroner, arrived at the house to view the body of W.M. She noted multiple marks all over W.M.'s body – his head, neck, torso, arms, legs, and back. From looking at the injuries to W.M.'s body, she was unable to immediately determine the cause of death, although initially she believed the trauma to his face may have led to a concussion, causing his death. She determined W.M. died laying in his bed, between the hours of 9:00 a.m. and noon on April 16, 2018. She further

noted four areas of vomit in W.M.'s bedroom, which were analyzed to help determine time of death.

{¶10} W.M.'s body was sent to Licking County, where Dr. Charles Lee performed an autopsy. Dr. Lee determined the injury which caused the death was a ruptured bowel, which led to peritonitis. The doctor determined the ruptured bowel was caused by blunt force trauma to the abdomen by something of substance inflicted hard and fast, such as a punch or a kick. According to Dr. Lee, the injury would need to be inflicted when the boy's spine was stable in order for the bowel to crush against the spine, causing it to rupture, and most likely W.M. was in a stable position against a wall or the floor. He estimated the injury occurred 8-24 hours prior to W.M.'s death. W.M.'s brain was swollen, and he had twice the amount of diphenhydramine in his system as is the therapeutic dose for an adult. W.M. was malnourished, weighing only 35 pounds at the time of his death.

{¶11} Appellant was indicted by the Guernsey County Grand Jury on two counts of murder, two counts of involuntary manslaughter, one count of felonious assault, and one count of endangering children. The case proceeded to jury trial in the Guernsey County Common Pleas Court.

{¶12} The jury found appellant guilty of all six charges. The court found all charges merged into one, and the State elected to have appellant sentenced on felony murder, in which the underlying offense was endangering children. The trial court sentenced appellant to a term of incarceration of fifteen years to life.

{¶13} Appellant then appealed. Pursuant to an Opinion filed in *State v. Benson*, Guernsey App. No. 19CA00009, 2020-Ohio-1258, on March 23, 2020 from which the

statement of facts are taken, this Court affirmed the judgment of the trial court. Appellant filed an appeal in the Supreme Court of Ohio.

{¶14} On June 16, 2020, appellant filed a Petition to Vacate or Set Aside Judgment of Conviction and Sentence pursuant to R.C. 2953.21. Upon the motion of appellant's counsel, the trial court, as memorialized in an Entry filed on June 17, 2020, stayed the proceedings "until attorney visits resume at the correctional institution where Defendant is confined, and/or the jurisdictional appeal in Ohio Supreme Court Case No. 2020-0709 is concluded, whichever occurs later."

{¶15} Appellant, on January 10, 2022, filed a pro se Motion for Access to Public Records Pursuant to R.C. 149.43(B)(8). Appellant, in his motion, alleged that he needed such records to defend himself in the in the pending Petition to Vacate or Set Aside Judgment of Conviction and Sentence pursuant to R.C. 2953.21 and also to defend himself in a civil action brought against him stemming from his criminal case.

{¶16} The trial court, via an Entry filed on January 20, 2022, denied such motion stating, in relevant part, as follows: "The Court, on June 17, 2020, upon Motion of Defendant's Attorney, Dennis C. Belli, stayed proceedings on Defendant's Petition for Post-Conviction Relief until attorney visits resume at the correctional institution where Defendant is confined, and/or the jurisdictional appeal in Ohio Supreme Court Case No. 2020-0709 is concluded, whichever occurs later. Therefore, Defendant's Motion for Access to Public Records is hereby **DENIED**."

{¶17} Appellant now appeals, raising the following assignment of error on appeal:

**{¶18}** "I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO FIND THAT THE DEFENDANT PRESENTED A JUSTICIABLE CLAIM FOR ACCESSING PUBLIC RECORDS PURSUANT TO [R.C.] 149.43(B)(8)."

I

**{¶19}** Appellant, in his sole assignment of error, argues that the trial court erred in denying his Motion for Access to Public records.

**{¶20}** Ohio's Public Records Act requires a public office to make copies of public records available to any person on request and within a reasonable period of time. R.C. 149.43(B)(1). *State ex rel. McDougald v. Greene*, 161 Ohio St.3d 130, 2020-Ohio-3686, 161 N.E.3d 575, ¶ 9. The Ohio Supreme Court construes the Public Records Act " 'liberally in favor of broad access' " to public records. *State ex rel. Cincinnati Enquirer v. Hamilton Cty.,* 75 Ohio St.3d 374, 376, 1996-Ohio-214, 662 N.E.2d 334.

**{¶21}** As pertinent here, R.C. 149.43(B)(8) provides that:

> A public office or person responsible for public records is not required to permit a person who is incarcerated pursuant to a criminal conviction * * * to obtain a copy of any public record concerning a criminal investigation or prosecution * * * unless the request to inspect or to obtain a copy of the record is for the purpose of acquiring information that is subject to release as a public record under this section and the judge who imposed the sentence or made the adjudication with respect to the person, or the judge's successor in office, finds that the information sought in the public record is necessary to support what appears to be a justiciable claim of the person.

**{¶22}** This statute "sets forth heightened requirements for inmates seeking public records, and requires an incarcerated criminal defendant to demonstrate that the information he is seeking pursuant to R.C. 149.43 is necessary to support a justiciable claim or defense." *State v. Gibson*, 2nd Dist. Champaign No. 06CA37, 2007-Ohio-7161, ¶ 13. A justifiable claim does not exist where an inmate fails to identify "any pending proceeding with respect to which the requested documents would be material * * *." *State v. Atakpu*, 2d Dist. Montgomery No. 25232, 2013-Ohio-4392, ¶ 9, citing *Gibson* at ¶ 14.

**{¶23}** " '[I]t is the responsibility of the person who wishes to inspect and/or copy records to identify with reasonable clarity the records at issue.' " *State ex rel. Morgan v. New Lexington,* 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208, ¶ 29, quoting *State ex rel. Fant v. Tober,* 8th Dist. No. 63737, 1993 WL 173743, *1 (Apr. 28, 1993), affirmed, 68 Ohio St.3d 117, 623 N.E.2d 1202 (1993).

**{¶24}** In his R.C. 149.43(B)(8) motion, appellant alleged that he had a pending post-conviction action and that a civil action had been brought against him which stemmed from this case. However, appellant has failed to specify exactly what documents that he was requesting  and only vaguely referred to "public documents." Without information as to what documents that appellant was requesting, the trial court could not determine if such documents were necessary to support a justiciable claim. We find, therefore, that the trial court did not err in denying appellant's motion.

**{¶25}** Appellant's sole assignment of error is, therefore, overruled.

{¶26} Accordingly, the judgment of the Guernsey County Court of Common Pleas is affirmed.

By: Baldwin, J.

Gwin, P.J. and

Wise, John, J. concur.