[Cite as *State v. Benson*, 2025-Ohio-345.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| MARVIN BENSON, | : | Case No. 24CA000026 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:       Appeal from the Guernsey County
                               Court of Common Pleas, Case No.
                               18-CR-98

JUDGMENT:                      Affirmed

DATE OF JUDGMENT:              February 3, 2025

APPEARANCES:

For Plaintiff-Appellee         For Defendant-Appellant

NO APPEARANCE                  MARVIN BENSON, Pro Se
                               #756728
                               BeCI
                               68518 Bannock Road
                               St. Clairsville, Ohio 43950

*Baldwin, J.*

**{¶1}** Appellant, Marvin Benson, appeals the judgment entry of the trial court denying appellant's petition for post-conviction relief. The appellee is the State of Ohio.

### STATEMENT OF THE FACTS AND THE CASE

**{¶2}** The facts and case as set forth in the previous appeal in this matter are as follows:

On Friday, April 13, 2018, six-year-old W.M. arrived at school, and hugged his principal. W.M. participated in an event called COSI on Wheels, a field trip brought to the school building with presentations and activities for students. Photographs taken by the school principal show W.M. enjoying participation in the activities with his peers.

On Monday, April 16, 2018, at approximately 3:00 p.m., paramedics were dispatched to a home occupied by appellant, his girlfriend Tiera Mounts, appellant's three children, and Tiera's two children, one of whom was W.M. Upon arrival, the emergency medical technician (EMT) found a child, later identified as W.M., unresponsive on the second floor of the house. W.M. was not breathing, had no pulse, and his arm was not flexible, leading the EMT to believe the child had been dead for longer than an hour.

Patrolman Jarod Eubanks of the Cambridge Police Department arrived on the scene. He noted the child's body was "battered and bruised." Tr. 284. Based on his observations of W.M.'s body, he requested a detective to the scene. Detective Greg Clark of the Cambridge Police Department arrived on the scene.

Det. Clark asked appellant and Tiera Mounts to come with him to the police station, which they agreed to do. Before interviewing appellant, Det. Clark read him his Miranda rights. During the first part of the interview, appellant told police W.M. had "episodes" where he would fall down as if his legs were weak, and the bruises on W.M.'s body were from "episodes" where he beats himself. Appellant stated Tiera disciplined W.M. by "busting his ass and like that," by making him do wall squats, and when W.M. "keeps fighting" with Tiera, she'll call her stepmom to come and get him. Appellant said Sunday night, the night before W.M. died, W.M. was "acting up real bad." They made W.M. do wall squats, but he would just stand and lean against the wall. After they got him to do the wall squats, he kept dropping to the ground and would sit there, like he didn't want to listen.

Appellant stated on Monday morning, April 16, W.M. did not want to get up and put his shoes on. There was vomit in W.M.'s bedroom from the night, although appellant claimed they did not hear him vomiting during the night. When W.M. kept falling, appellant put him up against the wall to do wall squats. When appellant was trying to leave to take the other children to school, W.M. put his coat on "half-assed." Appellant told police the "worst thing I did this morning was kicked him in his butt." Appellant admitted kicking W.M. out the front door of the house, where W.M. hit his head on the stoop. Although Det. Clark had noted a gash with fresh blood on W.M.'s head, Appellant claimed there was a scratch, but no blood on W.M.'s head. Appellant stated W.M. went back to bed that morning, and at one point when

he woke up to use the restroom, appellant gave him cough syrup. When Tiera arrived home from work in the afternoon, appellant told her W.M. was acting "like a butt" plus W.M. had vomit to clean up in his room. Tiera went upstairs to W.M.'s room, and shortly thereafter Appellant heard her screaming.

After a break, Det. Clark resumed his interview with Appellant. Appellant stated he met Tiera a year ago, and as to W.M., she was "beating his ass." He stated sometimes Tiera went pretty far and had to call her mom. Appellant stated after he "busted his butt" one time, W.M. started listening. Tiera would often say she could not handle W.M. and wanted to get rid of him.

Appellant told Det. Clark on the night before W.M.'s death, Tiera wasn't dealing with W.M., and told appellant to handle it. Appellant stated he put W.M. on the wall to do wall squats, and kicked W.M.'s feet out from under him. Appellant tossed W.M., and he hit a space heater or radiator. Appellant stated when he fell and hit his head on the radiator, W.M. laid there "with that defiant look that he does." Appellant picked him up and said, "Get your ass back on the wall." W.M. got back on the wall, but kept spitting and trying to hit Appellant. Tiera told appellant to hit him back, and appellant kicked W.M. in the stomach. W.M. fell over. Appellant tossed W.M. a second time, and kicked W.M. again while he was laying on the ground. Appellant admitted several times to kicking W.M. twice on Sunday night and once on Monday morning, and to throwing W.M. across the room twice. Appellant

also told police Tiera threw W.M. once on Sunday night, and kicked his feet out from under him. When W.M. kept "acting up", Tiera told appellant to put him in the shower.

Dr. Sandra Schubert, the Guernsey County Coroner, arrived at the house to view the body of W.M. She noted multiple marks all over W.M.'s body – his head, neck, torso, arms, legs, and back. From looking at the injuries to W.M.'s body, she was unable to immediately determine the cause of death, although initially she believed the trauma to his face may have led to a concussion, causing his death. She determined W.M. died laying in his bed, between the hours of 9:00 a.m. and noon on April 16, 2018. She further noted four areas of vomit in W.M.'s bedroom, which were analyzed to help determine time of death.

W.M.'s body was sent to Licking County, where Dr. Charles Lee performed an autopsy. Dr. Lee determined the injury which caused the death was a ruptured bowel, which led to peritonitis. The doctor determined the ruptured bowel was caused by blunt force trauma to the abdomen by something of substance inflicted hard and fast, such as a punch or a kick. According to Dr. Lee, the injury would need to be inflicted when the boy's spine was stable in order for the bowel to crush against the spine, causing it to rupture, and most likely W.M. was in a stable position against a wall or the floor. He estimated the injury occurred 8-24 hours prior to W.M.'s death. W.M.'s brain was swollen, and he had twice the amount of diphenhydramine

in his system as is the therapeutic dose for an adult. W.M. was malnourished, weighing only 35 pounds at the time of his death.

Appellant was indicted by the Guernsey County Grand Jury on two counts of murder, two counts of involuntary manslaughter, one count of felonious assault, and one count of endangering children. The case proceeded to jury trial in the Guernsey County Common Pleas Court.

They found appellant guilty of all six charges. The court found all charges merged into one, and the State elected to have appellant sentenced on felony murder, in which the underlying offense was endangering children. The trial court sentenced appellant to a term of incarceration of fifteen years to life.

Appellant then appealed. Pursuant to an Opinion filed in State v. Benson, Guernsey App. No. 19CA00009, 2020-Ohio-1258, on March 23, 2020 from which the statement of facts are taken, this Court affirmed the judgment of the trial court. Appellant filed an appeal in the Supreme Court of Ohio.

On June 16, 2020, appellant filed a Petition to Vacate or Set Aside Judgment of Conviction and Sentence pursuant to R.C. 2953.21. Upon the motion of appellant's counsel, the trial court, as memorialized in an Entry filed on June 17, 2020, stayed the proceedings "until attorney visits resume at the correctional institution where Defendant is confined, and/or the jurisdictional appeal in Ohio Supreme Court Case No. 2020-0709 is concluded, whichever occurs later."

Appellant, on January 10, 2022, filed a pro se Motion for Access to Public Records Pursuant to R.C. 149.43(B)(8). Appellant, in his motion, alleged that he needed such records to defend himself in the in the pending Petition to Vacate or Set Aside Judgment of Conviction and Sentence pursuant to R.C. 2953.21 and also to defend himself in a civil action brought against him stemming from his criminal case.

The trial court, via an Entry filed on January 20, 2022, denied such motion stating, in relevant part, as follows: "The Court, on June 17, 2020, upon Motion of Defendant's Attorney, Dennis C. Belli, stayed proceedings on Defendant's Petition for Post-Conviction Relief until attorney visits resume at the correctional institution where Defendant is confined, and/or the jurisdictional appeal in Ohio Supreme Court Case No. 2020-0709 is concluded, whichever occurs later. Therefore, Defendant's Motion for Access to Public Records is hereby DENIED."

*State v. Benson*, 2022-Ohio-2126 (5th Dist.).

**{¶3}** Appellant timely appealed the trial court's decision, and this Court affirmed the trial court's denial of Appellant's Motion for Access to Public Records on June 21, 2022.

**{¶4}** On November 3, 2023, Appellant filed a Motion to Lift Stay and Reactivate Petition 2953.21, requesting the trial court to lift the stay on the case put in place due to COVID and move forward pro se with his petition for post-conviction relief.

**{¶5}** On November 28, 2023, the trial court granted Appellant's motion.

**{¶6}** On December 18, 2023, Appellant filed a motion to request leave to file an amended petition.

**{¶7}** On February 16, 2024, the trial court granted Appellant's motion.

**{¶8}** On April 15, 2024, the trial court denied Appellant's Motion to Request Litigation, granted the Appellant's Motion to Amend Post Conviction Relief Petition and set the matter for a non-oral administrative review hearing for May 28, 2024.

**{¶9}** Appellant's petition for post-conviction release raised ten claims:

Claim I – a defense attorney's failure to raise and competently litigate a potentially meritorious ground for suppression of evidence violates a defendant's Sixth and Fourteenth Amendment rights to the effective assistance of counsel.

Claim II – Appellant was denied his Fifth, Sixth, and Fourteenth Amendment right to "present as a 'summoning up of a juror (voir dire)' had taken place where a juror was able to be untruthful. This was without Appellant's knowledge until after his appeal had been exhausted when he received his trial transcripts."

Claim III – Appellant's Fifth and Fourteenth Amendment were violated under *Brady v. Maryland*, 373 U.S. 83, *Kyles v. Whitney*, 514 U.S. 419, and *Strickler v. Green*, 527 U.S. 263. When the State "withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment." *Smith v. Cain*, 565 U.S. 73, 75. Appellant's attorney requested discovery concerning Tiera Rockaway. The prosecution said Ms.

Rockaway was not part of appellant's case. Tiera Rockaway was under investigation and information relating to that case was confidential.

Claim IV – Appellant's rights under the Fifth, Sixth, and Fourteenth Amendment were violated as to his Confrontation Clause and Compulsory process."

Claim V – Appellant's rights under the Fourth, Fifth, and Fourteenth Amendment were violated by an illegal arrest and coerced statements.

Claim VI – Appellant's Fifth and Fourteenth Amendment due process was violated under the Cumulative Error Doctrine.

Claim VII – "Prosecutorial Misconduct, Constitutional rights were violated."

Claim VIII – "Lack of Sufficient Evidence, Constitutional Rights were violated."

Claim IX – "Delay in indictment of a co-defendant a mere year later, Constitutional rights were violated."

Claim X – "Void judgment, Constitutional rights were violated."

**{¶10}** On May 14, 2024, Appellee filed a Response to Amended Post Conviction Relief Petition.

**{¶11}** On May 20, 2024, Appellant filed a Motion to Defendant's Contra Response to Prosecutor's Response to Petitioner Marvin Benson's Amended Petition for Post-Conviction Relief.

**{¶12}** On August 12, 2024, the trial court denied Appellant's amended petition for post-conviction relief.

{¶13} Appellant timely filed a notice of appeal and herein raises the following sole Assignment of Error:

{¶14} "I. TRIAL COURT ERRED AND ABUSED IT'S [sic] DISCRETION, DENYING PETITION 2953.21. FAILING TO REVIEW EACH CLAIM INDEPENDENTLY AND NOT HOLDING A [sic] EVIDENTIARY HEARING. [sic] WHERE SUFFICIENT OPERATIVE FACTS WERE SUBMITTED, TO PUT THE CONVICTION IN SUCH A DIFFERENT LIGHT AS TO UNDERMIND THE CONFIDENCE IN THE VERDICT. THE STATE'S ENTIRE THEORY, PRESENTED EVIDENCE TO THE GRAND JURY AND TRIAL DISCOVERY ALLEGED BENSON TO HAVE SOLELY COMMITTED CRIMES AGAINST THE DECEDENT AND NO ONE ELSE WAS AROUND IN CASE AT BAR. EVEN THE JURY BEING THE SOLE FACT FINDERS OF THE CASE, WAS EXCLUDED FROM EXAMINING OR HEARING OF ANY KIND OF EVIDENCE WHATSOEVER PERTAINING TO THE POSSIBILITY OF THERE BEING ANY TYPE OF CO-DEFENDANT. PROSECUTION MADE THIS VERY CLEAR AT TRAIL [sic] FOR THE JURY, THIS CASE DOES NOT INVOLVE ANYONE ELSE BUT TWO PEOPLE BENSON AND THE DEFENDANT. SPECIFICALLY EXCLUDING ANY CULPABILITY OF TIERA ROCKAWAY AKA [M.] AS A CO-DEFENDANT IN THE CASE, TO THE JURY. YET, ATTORNEY GENERAL FOR THE STATE PRESENTED A COMPLETE [sic] DIFFERENT THEORY TO THE GRAND JURY A MERE YEAR LATER INDICATING TIERA ROCKAWAY AKA [M.] ON A 33 COUNT INDICTMENT FOR MURDER OF THE VERY SAME DECEDENT, CASE NUMBER 19-CR-280, AND A NEGOTIATED PLEA WAS REACHED AS BEING A CO-DEFENDANT IN CASE AT BAR, CASE NUMBER 21-CR-25. THE NEGLIGENCE BY THE STATE, SHOWS THAT BENSON'S DUE

PROCESS HAS BEEN VIOLATED. WHERE ITS [sic] MANDATED THAT 'ALL PERSONS BE TREATED EQUALLY UNDER LAW'. [sic] THIS ALONE DOUBT'S [sic] THE CONVICTION AGAINST BENSON, WHERE HIS CONVICTION/CASE HAS NO CO-DEFENDANT."

**I.**

**{¶15}** In Appellant's sole assignment of error, Appellant argues the trial court abused its discretion denying Appellant's petition for post-conviction relief. We disagree.

**ANALYSIS**

**{¶16}** The doctrine of *res judicata* has been utilized to justify the dismissal of post-conviction proceedings where the issue in question was never raised on direct appeal from the original judgment and sentence. *State v. Nichols*, 11 Ohio St.3d 40, 42 (1984). We find the doctrine of *res judicata* bars these issues.

**{¶17}** "Under the doctrine of *res judicata*, a final judgment of conviction bars the defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that the defendant raised or could have raised at trial which resulted in that judgment of conviction or on appeal from that judgment." *State v. Snyder*, 2016-Ohio-832 (5th Dist.), ¶26; *quoting State v. Perry*, 10 Ohio St.2d 175 (1967). Further, "[i]t is well-settled that, 'pursuant to *res judicata*, a defendant cannot raise an issue in a [petition] for post-conviction relief if he or she could have raised the issue on direct appeal.' " *State v. Elmore*, 2005-Ohio-5940 (5th Dist.), ¶21; *quoting State v. Reynolds*, 1997-Ohio-304.

**{¶18}** Furthermore, the doctrine of *res judicata* also " 'prevents repeated attacks on a final judgment and applies to issues that were or might have been previously

litigated.' " *State v. Russell*, 2006-Ohio-6221 (10th Dist.), ¶21; *State v. Lindsay*, 2019-Ohio-5283 (5th Dist.), ¶¶21-22. The Ohio Supreme Court explained: "[r]es judicata bars the litigation of all claims that either were or might have been litigated in a first lawsuit." *State ex rel. Rust v. Lucas Cty. Bd. of Elections*, 2003-Ohio-5643.

**{¶19}** Appellant's first claim in his Amended Petition for Post-Conviction Relief is for ineffective assistance of trial counsel by failing to completely litigate a potentially meritorious ground for suppression challenging the admissibility of his custodial statements. Appellant also assigned this as an error in his direct appeal, which was overruled by this Court on March 23, 2020. *State v. Benson*, 2020-Ohio-1258 (5th Dist.), ¶¶36-46. Since Appellant already litigated this claim on direct appeal, it is barred by *res judicata*.

**{¶20}** Appellant's third claim was not brought on direct appeal. He requested information on Ms. Rockaway during trial. Therefore, he had an obligation to bring to the trial court's attention when the State did not provide the information. He then had the opportunity to raise on direct appeal his trial counsel's ineffectiveness in dealing with this issue at trial, or challenge the trial court's ruling. Accordingly, *res judicata* bars these claims from being raised in a petition for post-conviction relief.

**{¶21}** Appellant's second, third, fourth, fifth, and sixth claims were not brought on direct appeal. These claims were all known or could have been known at the time of trial and on direct appeal. Accordingly, *res judicata* bars these claims from being raised in a petition for post-conviction relief.

**{¶22}** Finally, Appellant summarily argues his seventh, eighth, ninth, and tenth claims in one sentence for each claim. Appellant fails to argue any operative facts in

support of these claims. Therefore, the trial court did not err in denying Appellant's petition for post-conviction relief on these claims.

{¶23} Accordingly, Appellant's sole assignment of error is overruled.

## CONCLUSION

{¶24} Based upon the foregoing, the decision of the Guernsey County Court of Common Pleas is, hereby, affirmed.

By: Baldwin, J.

Hoffman, P.J. and

King, J. concur.